STATE of Maine

v.

Preston P. AUSTIN.

Supreme Judicial Court of Maine.

Jan. 12, 1978.

Thomas E. Delahanty, II, Dist. Atty., Herbert Bunker, Jr. (orally), Deputy Dist. Atty., South Paris, for plaintiff.

Skelton, Taintor & Abbott, P. A. by John B. Cole, Lewiston (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The defendant, Preston P. Austin, was tried by complaint on two counts of assault and one count of disorderly conduct. 17-A M.R.S.A. §§ 207, 501(2). An Oxford County jury found him guilty on both assault charges and not guilty of disorderly conduct. The defendant appeals from the two judgments of guilty for assault.

We deny the appeal.

From the evidence produced at trial, the jury could have found the following facts.

At approximately 1 a. m. on July 11, 1976, Officer John Bernard, Jr., police chief of the Town of Mexico, and Officer Gregory Gallant of the Mexico Police Department, stationed themselves in a marked police cruiser opposite the MGM lounge on Main Street in Mexico, for the purpose of investigating repeated citizen complaints of loud noises from persons leaving the MGM around closing time. The officers observed several patrons come out of the MGM, some congregating in small groups on the sidewalk. Although some persons in the crowd were using loud language, the officers took no action until Chief Bernard heard someone shout an obscene name. As the same person repeated the phrase twice more, Chief Bernard singled out the defendant as the speaker and observed that he appeared to be directing his speech to a group of some five persons who were standing in an area between the MGM and an adjacent restaurant. As Chief Bernard watched, Austin crossed the street and started a conversation with one John Porello, who was seated in his parked car about 50 feet from the passenger side of the police cruiser. Chief Bernard, who was sitting in that seat with the window down, then heard Austin repeat the obscenity. Austin then put his arm up over the top of Porello's vehicle and, pointing his hand directly at the cruiser, called out another obscene name. Chief Bernard immediately got out of the cruiser and went over to Austin. When asked whether "he would clean up his mouth" and told by Chief Bernard that he did not appreciate Austin's name-calling, Austin re-plied that he had not called the Chief the obscene name. Chief Bernard, at that moment, advised Austin that he was under arrest for disorderly conduct.

Officer Gallant, who by that time had joined the others at the Porello car, assisted Chief Bernard, who was unsuccessfully attempting to put Austin in handcuffs, by picking Austin up around his waist from the rear and physically carrying him to the cruiser. There, the officers succeeded in handcuffing him, but in the process of placing him in the back seat of the cruiser, Austin kicked out at Officer Gallant, striking him in the thigh. On the ride to the police station, Austin continued to be unruly, positioning himself over the back of the front seat "screaming obscenities and threats." At one point, when Chief Bernard attempted to push him back down into the rear seat, Austin fell back and with his foot struck Chief Bernard in the area of his left ear, neck, and jaw. At the station, Austin was charged with disorderly conduct and two counts of assault.

The thrust of the defendant's arguments on appeal concerns his asserted right to resist an illegal arrest with force.[1] Prior to the effective date of the Criminal Code, May 1, 1976, Maine followed the prevailing common law rule that

> "[a]n illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery." *State v. Robinson*, 145 Me. 77, 81, 72 A.2d 260, 262 (1950).

Reading the provisions of the Criminal Code as a whole shows, however, that *Robinson* no longer states the law of Maine.

---

1. The defendant claims that the presiding justice erred in refusing to rule as a matter of law that his arrest for disorderly conduct was illegal. He predicates that claim of illegality (1) upon the alleged unconstitutionality of the disorderly conduct statute, 17-A M.R.S.A. § 501, and (2) upon an argument that his acquittal on the disorderly conduct charge necessitates the conclusion that Chief Bernard had no authority to make a warrantless arrest because the defendant had not committed a Class E crime in his presence, 17-A M.R.S.A. § 15. We deem it unnecessary, however, to decide either alleged basis of illegality in light of the fact that, as our decision today makes clear, the legality or illegality of the initial arrest is immaterial to the defendant's justification for using force against the arresting officer. Even if the disorderly conduct statute in fact suffers from constitutional infirmity (a question we do not now decide and as to which we intimate no opinion), the defendant gains no greater right to use force against the arresting officer.

The Code groups together in Chapter 5 entitled "Justification" several provisions governing the use of force by law enforcement officers, as well as private citizens. 17-A M.R.S.A. § 101 et seq. Any conduct which is justifiable under that chapter constitutes a defense to any crime. 17-A M.R.S.A. § 101(1). Conduct which constitutes a crime is now exclusively defined by the Criminal Code, in combination with other statutes, private acts, and lawfully adopted rules, regulations, and ordinances. 17-A M.R.S.A. § 3(1). The legislature nowhere expressly included a similar provision stating that all defenses are also now embodied in statute. With respect to the right to use physical force to effect or resist an arrest, however, specific code provisions address the issue and must be taken to be comprehensive.

Section 107(1)(A) states that a law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person

"[w]hen and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, *unless he knows that the arrest or detention is illegal.*" (Emphasis added)

Section 108, which governs the use of physical force in defense of a person, provides that

"[a] person is justified in using a reasonable degree of nondeadly force upon another person *in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person,* and he may use a degree of such force which he reasonably believes to be necessary for such purpose." (Emphasis added)

A third relevant provision is section 752, which makes a person guilty of assaulting an officer if he "knowingly assaults a law enforcement officer while the officer is engaged in the performance of his official duties." The official comment to section 752 states:

"The policy here is *to discourage people in custody from a violent response to what they see as an illegal arrest.* The second rule is that if, in making the arrest, the officer uses more force than the law allows him, the victim of that excessive force commits no crime if he defends himself from it." (Emphasis added)

■ From examination of section 108, together with sections 107 and 752, it becomes clear that the legislature did not intend section 108 to give a person the right to resist a law enforcement officer's use of reasonable, nondeadly force to effect an arrest, whether legal or illegal. Section 107 clearly declares that a law enforcement officer is justified in using a reasonable degree of nondeadly force to effect an arrest when he reasonably believes it necessary to do so. The only exception to that justification exists when he *knows* that the arrest or detention is illegal. Thus, section 107 contemplates by its terms that the officer's justification defense will extend even to situations when, for any number of reasons, the arrest ultimately turns out to have been illegal. It must be emphasized that section 107 provides the officer with justification for the use of only a *reasonable* degree of nondeadly force; anything beyond that would be unlawful.

The policy of section 752 complements the legislature's grant to the officer of a limited, clearly defined justification for his use of force, regardless of a subsequent determination that the arrest was illegal; even as the officer is expressly given the right to use some force, the person being arrested is expressly prohibited from knowingly "causing bodily injury or offensive physical contact" to the officer. 17-A M.R.S.A. §§ 752(2), 207. As the comment to section 752 makes clear, it is precisely in the circumstance when a person believes that he is being illegally arrested that section 752 is intended to function as a deterrent to violence.

■ Under section 108, a private person is justified in using reasonable, nondeadly force "upon another person," in terms including a police officer, to defend

himself "from what he reasonably believes to be the imminent use of *unlawful*, non-deadly force by such other person." (Emphasis added). However, in light of the plain intent of sections 107 and 752, that language of section 108 does not justify the arrested person's use of force against the police officer merely on the ground that the arrested person reasonably believes the arrest to be illegal. That section makes the arrested person's justification depend upon the unlawfulness *of the force* used by the officer, not upon the illegality of the arrest. The officer's use of force, if not excessive, is lawful (under section 107) unless he *knows* the arrest is illegal. Even if the arrested person later establishes the unlawfulness of the officer's use of force, he loses his justification if he is the initial aggressor or the provoker of the unlawful force used by the police under the circumstances defined by subsections (A) and (B) of section 108(1).[2]

■ We thus read these sections of the Criminal Code as an integrated whole declaring the entire law relating to criminal responsibility for violence during an attempted arrest. In general, under the code a person being arrested must not respond violently. On the other hand, a police officer is given by the code substantial leeway in using nondeadly force in making an arrest—namely, that amount he reasonably believes necessary to make the arrest—provided he does not know the arrest is illegal. Section 108 gives the arrested person a right of self-defense against unlawful or excessive force used by the police officer; but if he reacts violently to nondeadly force applied by the police, he takes his chances on being able later to show the officer was not justified under section 107.

The legislature has thus cast the advantage on the side of law enforcement officers,[3] leaving the person arrested in most cases to pursue his rights, not through violent self-help, but through prompt hearing before a magistrate with prompt consideration for release on bail or personal recognizance. At the same time, the police should exercise their code-granted prerogatives with restraint, with police departments using administrative discipline to assure that individual officers in fact use no more force than necessary to effect arrests. Violence breeds violence, whoever starts it.

The defendant has assigned as error the presiding justice's refusal to grant the following jury instruction:

"That when a person is illegally arrested, he is privileged to use such force as is reasonably necessary and calculated, in view of the totality of the circumstances, to resist and deter the unlawful apprehension and detention by the party effecting the arrest."

The requested instruction was obviously derived from the rule of *State v. Robinson, supra*, which no longer is the law. The requested instruction was properly denied. The presiding justice's charge correctly stated the principles of law relevant to the defendant's defense of justification.

We have examined the defendant's remaining claims of error, and finding none with merit, the entry must be:

Appeal denied.

Judgments affirmed.

WERNICK and DELAHANTY, JJ., did not sit.

POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ., concur.

**2.** 17 M.R.S.A. § 108(1) reads in pertinent part as follows:

"However, such force is not justifiable if:
"A. With a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person; or
"B. He was the initial aggressor, unless after such aggression he withdraws from the encounter and effectively communicates to such other person his intent to do so, but the

latter notwithstanding continues the use or threat of unlawful, nondeadly force; . . ."

**3.** See *Model Penal Code* § 3.04(2)(a) (1962), providing that the "use of force is not justifiable under this Section," (entitled "Use of Force in Self-Protection" and generally similar to section 108 of the Maine Criminal Code) "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful . . . ." *See also Model Penal Code* § 3.04(2), Comment (Tent.Draft No. 8, 1958).