STATE of Maine

v.

Timothy TAUVAR.

Supreme Judicial Court of Maine.

Argued May 4, 1983.

Decided July 1, 1983.

Michael E. Povich, Dist. Atty., Sophie Spurr (orally), Michael L. Ross, Asst. Dist. Attys., Ellsworth, for plaintiff.

Silsby & Silsby, Raymond L. Williams (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

Timothy Tauvar appeals a judgment of conviction for criminal trespass, Class E, 17–A M.R.S.A. § 402(1)(D) (1983), following a jury trial in Superior Court, Hancock County. Because we sustain the defendant's challenge of the jury instructions concerning "lawful order," we vacate the judgment.

### I.

On August 30, 1981, the Jehovah's Witnesses were to conduct their scheduled morning meeting, the "Public Talk" and the "Watch Tower Study," which was open to the public. These meetings were announced in the local newspaper as public gatherings. Between 9:30 a.m. and 10:00 a.m., the defendant and his wife entered the Jehovah's Witnesses Hall on Park Street in Bar Harbor. The meeting hall was owned by the Bar Harbor Congregation of the Jehovah's Witnesses, Inc., a private corporation.

Officer Daniel Herrick of the Bar Harbor Police Department was subsequently dispatched to the meeting hall at the request of Lorenzo Creamer, an elder of the congregation, one of the administrators of the church. Creamer was also the vice president of the corporation and a member of the board of directors. Creamer met the officer outside the hall and informed him that Tauvar, an "unwanted guest," was inside the hall. The men then entered the building and approached Tauvar who was sitting quietly with his wife. Creamer asked the defendant to leave, but Tauvar refused. Officer Herrick reiterated the request and told the defendant that if he did not leave, he would be arrested for criminal trespass. The defendant again refused to leave; the officer arrested him.

Creamer testified at trial that in the past Tauvar while in the meeting hall had vocally asserted his prophecy, which was inconsistent with that of the Jehovah's Witnesses. According to Tauvar, he did not intend to disrupt this meeting. The defendant testified that he attended the meeting so that afterward he could present a public communication on the sidewalk outside the hall to apprise the congregation of any falsities spoken at the meeting.

Tauvar was originally tried in the District Court, Bar Harbor, and convicted of criminal trespass, 17–A M.R.S.A. § 402. On appeal to the Superior Court, Hancock County, he was afforded a de novo trial by jury pursuant to former M.D.C. Crim.R. 39(b), amended effective January 2, 1982. Subsequent to his conviction in the Superior Court, Tauvar filed a timely appeal to the Law Court.

### II.

We address only the defendant's challenge to the jury instruction regarding

the lawfulness of the order. Having properly preserved the objection, the defendant argues that the justice erred by instructing the jury that finding that "an order was given, you are instructed that it was, in fact, a lawful order." The defendant claims that it was improper for the justice to suggest that all orders are lawful orders. We agree.

Title 17–A M.R.S.A. § 402(1)(D) provides:

1. A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so:

. . . .

D. He remains in any place in defiance of a *lawful order* to leave, which was personally communicated to him by the owner or other authorized person;

. . . .

(Emphasis added.) Consequently, the State must prove that a "lawful order" was issued. We must interpret criminal statutes as being free from unnecessary and superfluous language. *State v. Thibeault,* 402 A.2d 445, 449 (Me.1979); *State v. Tullo,* 366 A.2d 843, 848 (Me.1976). By using "lawful" to describe "order," therefore, the legislature intended that "lawful" have some independent meaning.

■ With regard to property upon which the general public is invited to enter, an order to leave the premises is lawful only when the owner has some justification for requesting removal. For example, when a person in an inn or restaurant is creating a disturbance, the owner may order that person to leave the premises. 30 M.R.S.A. § 2854–C (Supp.1982–1983); *see State v. Gordon,* 437 A.2d 855, 857 (Me.1981); *see also Atwater v. Sawyer,* 76 Me. 539, 541 (1884) (innkeeper may not refuse to serve dinner to soldier merely because other soldiers created disturbances). That order is "lawful" for the purposes of the criminal trespass statute only if the person sought to be ejected is disorderly. *See Gordon,* 437 A.2d at 857 (boisterous patron of Dunkin Donuts convicted of criminal trespass); *see also Tullo,* 366 A.2d at 847 (sanctions imposed for criminal trespass at common law

to protect public, therefore trespass not crime unless accompanied by actual or threatened breach of peace). The rationale supporting such a principle is that innkeepers and victualers have a duty to accommodate "strangers, travelers, and others." 30 M.R.S.A. §§ 2851–2852 (1978). Because they serve the general public, they cannot lawfully exclude certain members of the public without justification. The misconduct of the person may constitute a basis for lawfully seeking removal of that person.

In contrast, with regard to private property not open to the general public, the owner may lawfully order a person to leave even though the entry was authorized and peaceful. *See* Op. Me. Att'y Gen. (Mar. 4, 1980) (signs which read "no trespassing" without signature of owner constituted lawful order); *accord O'Brien v. United States,* 444 A.2d 946, 948 (D.C.App.1982). The mere demand of the owner constitutes a lawful order for the purposes of the criminal trespass statute.

■ We find applicable to this case the principle that for the purposes of the criminal trespass statute an order to leave property to which the public has been invited is lawful only when the owner has some justification. The meeting that Tauvar attempted to attend was open to members of the public including the defendant. To render Tauvar's refusal to depart the Jehovah's Witnesses Meeting Hall a violation of the statute, Creamer's order must have had some lawful justification. *See Snead v. Commonwealth,* 212 Va. 803, 804, 188 S.E.2d 197, 198 (1972) (office of Botetourt County Welfare Department). The State presented evidence that in the past the defendant had created a disturbance at the meeting hall. This evidence is sufficient to generate the issue of the lawfulness of the order. *See Atwater,* 76 Me. at 541. The sufficiency of the evidence, however, does not warrant the court's refusal to instruct the jury on the issue of whether the order was lawful.

Because we hold that, in the circumstances of this case, there must exist some justification for the church to revoke its invita-

tion to attend the scheduled meeting, we reject Tauvar's contention that the statute impermissibly abridges his right to the free exercise of his religion under state and federal constitutional guarantees. We also detect no denial of access to a public forum for the exercise of Tauvar's rights of free speech or assembly. Although we uphold the denial of a judgment of acquittal, we must vacate the conviction because Tauvar was denied the right to have the question of a lawful order submitted to the jury.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.