2000 ME 95

**STATE of Maine**

v.

**Paul DUMOND.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.
Decided May 19, 2000.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

Andrew P.T. Bloom, James G. Boulos, The Boulos Law Firm, Saco, for defendant.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Paul Dumond appeals from a judgment entered in the Superior Court (Cumberland County, *Warren, J.*) following a jury trial convicting him of assaulting a police officer and failing to submit to arrest. On appeal Dumond contends that his justification defense required the jury to determine whether his initial arrest was illegal and that therefore the court erred when it refused to give instructions defining the specific offenses that motivated Dumond's arrest. Finding no error, we affirm.

[¶ 2] The relevant facts presented at trial may be summarized as follows: In February of 1998 at approximately 12:45 a.m., Officer Burke of the Portland Police Department responded to a call requesting that he assist Officer Strout, who was in the process of dealing with a disturbance caused by three or four men in front of the Pavilion, a nightclub on Middle Street. When Burke arrived at the Pavilion, he saw Strout approaching the disorderly men. Burke was Strout's backup; he took a position slightly away from Strout. From this vantage point, Burke could more readily observe the situation and thus warn Strout of developing problems that Strout would not otherwise be able to see.

[¶ 3] There was a large and noisy crowd in front of the club, many of whom were intoxicated. Both officers were aware that the arrival of police at that time of night tended to incite a crowd, and consequently they took care to avoid being overly aggressive, in order to minimize the crowd's involvement. Although one of the disorderly individuals, Paul Ladacackos, was heavily intoxicated and verbally abusive, Strout attempted to control the confrontation with talk rather than force.

[¶ 4] Burke was not the only officer who provided backup for Strout. Sergeant Germaine had also responded to the call for assistance. Unlike Strout and Burke, Germaine was in plainclothes. When he first arrived, Germaine was concerned only with observing the scene, though he was also available to intervene should the crowd get out of hand. Germaine felt it preferable for the uniformed officers to handle the situation. As the senior officer on the scene, Germaine paid particularly close attention to Burke and Strout; he felt they were handling the confrontation with Ladacackos appropriately and nonaggressively.

[¶ 5] Strout's initial actions on the scene were attempts to get the crowd and particularly the disorderly men to disperse. Although one of the disorderly men did leave the scene when confronted by Strout, Ladacackos refused and continued to behave in a loud and disorderly manner. Strout decided to place him under arrest. Burke moved forward to assist as Strout moved Ladacackos away from the entrance to the Pavilion and back toward two police cruisers parked on Middle Street. At the

cruisers, the officers checked Ladacackos for weapons and placed him in handcuffs.

[¶ 6] Burke once again took up a position where he could watch both Strout and the crowd. Strout took Ladacackos to the rear door of the cruiser. Burke noticed that two people had broken off from the crowd on the other side of Middle Street. They appeared to be following Strout and Ladacackos. Burke was concerned that these two people might be friends of Ladacackos. The two people seemed intoxicated and were yelling at Burke. They walked into the street, even though Middle Street was heavily travelled at that time of night. Burke told them to return to the sidewalk. Burke was concerned because, even if they did not intend to come to Ladacackos's aid, they were distracting him from his primary mission, which was to look out for Strout's safety.

[¶ 7] One of the pair approaching and yelling at Burke was Paul Dumond. Neither Dumond nor his friend initially obeyed Burke's commands to return to the sidewalk, but instead advanced upon Burke, yelling that what he and Strout were doing was not right.[1] Burke noticed that Dumond was highly agitated as he came across the street. Despite Dumond's agitation, Burke remained calm and continued to order Dumond and his friend to return to the sidewalk. At this point, the friend tried to get Dumond to return to the sidewalk, but Dumond refused and continued to advance upon Burke. By this time, Dumond was in the middle of the street, near Burke and hindering the passage of cars on Middle Street. Dumond brushed up against Burke, and Burke decided to arrest him for obstructing a public way and obstructing government administration.

[¶ 8] Burke attempted to take Dumond back to the cruiser so that he could pat him down for weapons before handcuffing him and placing him inside the vehicle. At some point before Burke could handcuff him, Dumond realized he was being arrested and attacked the officers in an effort to escape. Dumond began throwing punches and completely lost control, shouting at the officers that he was going to "fuck them up," which the officers interpreted as a threat that he was going to try to kill them. Burke was hit in the face and lost a contact lens, Germaine was also hit in the face, and the side view mirror of the patrol car was damaged. Burke and Germaine had difficulty restraining Dumond; Strout saw the fight and moved to assist. Even so, the three officers could not restrain Dumond until Strout used cayenne pepper spray to incapacitate him. The three officers handcuffed Dumond and placed him in a police van. During the fight with Dumond, Ladacackos escaped when one of his friends opened the cruiser door.

[¶ 9] Dumond was indicted on seven counts relating to this incident. Some of these charges were dismissed and in February of 1999 Dumond was tried before a jury for assault on a police officer, two counts of criminal mischief relating to the damage to Burke's contact lens and to the cruiser's side-view mirror, and for failure to submit to arrest.[2] Dumond raised a justification defense to the charges. After the close of evidence, Dumond moved for acquittal on the two criminal mischief counts. The court granted the motion as to the side view mirror but reserved judgment as to the contact lens. The jury returned a verdict of guilty of assault on a police officer and of failure to submit to arrest, but of not guilty of criminal mischief. Prior to sentencing, Dumond again moved for acquittal and for a new trial. Dumond argued that there was insufficient evidence to allow the jury to find that Burke did not know the arrest was illegal,

1. Dumond claimed at trial that Strout was verbally and physically abusive to Ladacackos.

2. Though Dumond was initially indicted on the charges that were the basis of the arrest, namely obstructing a public way and obstructing government administration, the State dismissed those charges before trial.

that the court erred in failing "to instruct the jury as to the legal definitions of the offenses that gave rise to the arrest," and that the court erred in failing to give an instruction for simple assault. Following a hearing, the court denied Dumond's motion in its entirety and sentenced Dumond to a term of six months for assault on a police officer and 30 days, concurrent, for failure to submit to arrest. All but 48 hours of the sentence was suspended and Dumond was placed on a year probation for each count, to be served concurrently. Dumond appeals from the judgment.

■ [¶ 10] On appeal, Dumond argues that the court erred when it failed to give an instruction about the elements of obstruction of a public way and of obstruction of government administration because the jury could not properly evaluate his justification defense without knowing the legal definitions of these two offenses. As an initial matter, we must consider the State's suggestion that Dumond failed to properly preserve his objection because he did not renew it after the charge was given and before the jury retired. The State cites three federal cases interpreting the federal rules as support for this proposition. *See United States v. Barrett*, 598 F.Supp. 469 (D.Me.1984) (interpreting Fed.R.Crim.P. 30); *McGrath v. Spirito*, 733 F.2d 967 (1st Cir.1984) (interpreting Fed.R.Civ.P. 51); *Carrillo v. Sameit Westbulk*, 514 F.2d 1214 (1st Cir.1975) (interpreting Fed.R.Civ.P. 51). Though these cases set forth the law in the First Circuit, *see, e.g., United States v. Monteiro*, 871 F.2d 204, 208 (1st Cir.1989), and though M.R.Crim. P. 30(b) has language identical to its federal counterparts, Maine has never adhered to a strict requirement that objections be renewed after the charge is given. *See State v. Morey*, 427 A.2d 479, 482 (Me.1981). Although we have repeatedly admonished counsel that the better practice is to object after the charge is given, *see State v. Rice*, 379 A.2d 140, 144 n. 3 (Me.1977); *Morey*, 427 A.2d at 482 n. 2, we have only required an objection be renewed after the charge when the circumstances of the case were such that the trial court was unaware of the defendant's objection, as, for example, when the court "purport[s] to instruct in accordance with the defendant's wishes," only to find the defendant arguing on appeal that the instruction was erroneous. *See Rice*, 379 A.2d at 144. In the present case, Dumond requested particular instructions that the court refused to give. In such cases, we do not require that the objection be renewed after the charge has been given. *See id.* ("It would have been futile for defendant ... to have renewed his obvious disagreement after completion of the charge."); *State v. Burnham*, 406 A.2d 889, 892 (Me.1979) (noting that error was preserved because instruction was requested but not given). We decline to abandon these established rules in favor of the federal approach. *See Irish v. Gimbel*, 2000 ME 2, ¶ 5, 743 A.2d 736, 737.

■ [¶ 11] When an objection to jury instructions has been preserved, we review jury instructions in their entirety. *See Wheeler v. White*, 1998 ME 137, ¶ 6, 714 A.2d 125, 127. Dumond does not argue that the instructions were incorrect, just that the court erred in failing to give an additional instruction. We review for abuse of discretion the refusal to give further instructions when the instructions that were given are substantially correct. *See Mixer v. Tarratine Market*, 1999 ME 27, ¶ 6, 724 A.2d 614, 615.

> A party is entitled to a requested jury instruction when that instruction (1) states the law correctly; (2) appears to be supported by the facts of the case; (3) is not misleading or confusing; (4) is not already sufficiently covered in the given charge; and (5) when refusal to give the instruction would result in prejudice to the party requesting it.

*Id.* Dumond's requested instructions fail to meet at least two of these requirements. First, they are misleading. Second, the refusal to give the instructions did not prejudice Dumond.

[¶ 12] Under the law of justification in Maine, a private citizen is limited in his or her legal ability to resist an arrest by a police officer. Maine no longer adheres to the common law rule that a citizen has the same rights to resist an illegal arrest "as he would have in repelling any other assault and battery." *State v. Austin,* 381 A.2d 652, 653 (Me.1978) (quoting *State v. Robinson,* 145 Me. 77, 81, 72 A.2d 260, 262 (1950)). The interplay of 17–A M.R.S.A. §§ 107(1) [3] & 108(1–A) [4] now limits a citizen's ability to respond with force to an arrest. *See* 17–A M.R.S.A. §§ 107(1), 108(1–A) (1983 & Supp.1999). Unless an officer has used excessive force,[5] a citizen may not resist the arrest unless the officer "knows the arrest is illegal." *Austin,* 381 A.2d at 655. The actual legality of an arrest is not the relevant determination; indeed, even if the arrest ultimately is found to be illegal, the justification defense will fail absent an indication that the officer knew of the illegality at the time of the arrest. *See id.* at 653 n. 1, 654. An instruction on the elements of obstructing a public way and obstructing government administration is misleading for precisely this reason. It creates the possibility that the jury would focus on the question of whether or not the arrest was illegal rather than on what Burke knew of the legality of the arrest.

[¶ 13] Even if the proposed instructions were not misleading, Dumond has suffered no prejudice from their omission. Dumond's proposed instructions are solely fo-cussed upon the immaterial question of whether the arrest was, in fact, illegal. The jury, however, was correctly charged on the material question of whether Burke knew that the arrest was illegal and concluded, as fact, that Burke did not know his arrest of Dumond was illegal. Dumond's proposed instructions would not alter that factual determination and therefore would not change the legal conclusion that Dumond was not justified in his use of force against Burke.

The entry is:

Judgments affirmed.

---

**3.** The statute provides:

A law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person:
**A.** When and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, unless he knows that the arrest or detention is illegal; or
**B.** To defend himself or a 3rd person from what he reasonably believes to be the imminent use of nondeadly force encountered while attempting to effect such an arrest or while seeking to prevent such an escape.
17–A M.R.S.A. § 107(1) (1983).

**4.** The statute provides:

A person is not justified in using nondeadly force against another person who that person knows or reasonably should know is a law enforcement officer attempting to effect an arrest or detention, regardless of whether the arrest or detention is legal. A person is justified in using the degree of nondeadly force the person reasonably believes is necessary to defend the person or a 3rd person against a law enforcement officer who, in effecting an arrest or detention, uses nondeadly force not justified under section 107, subsection 1.
17–A M.R.S.A. § 108(1–A) (Supp.1999).

**5.** Dumond does not argue that the officers used excessive force during his arrest.