2001 ME 62

**STATE of Maine**

v.

**Ryan DYER.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 18, 2001.
Decided April 20, 2001.

(Me.1981);   *accord*   1   M.R.S.A.   § 407(1);   *Chase,* 1998 ME 260, ¶ 10, 721 A.2d at 639.

Neale T. Adams, District Attorney, Carrie L. Linthicum, Asst. Dist. Atty., Presque Isle, for State.

Jefferson T. Ashby, Esq., Hardings Law Offices, Presque Isle, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Ryan Dyer appeals from a judgment entered on a jury verdict in the Superior Court (Aroostook County, *Warren, J.*) finding him guilty of assault (Class D), 17–A M.R.S.A. § 207 (1983). Dyer contends that the court erred in refusing to instruct the jury on the use of force in defense of premises, 17–A M.R.S.A. § 104(1) (1983). We agree, vacate the judgment, and remand for a new trial.

## BACKGROUND

[¶ 2] The facts viewed in the light most favorable to Dyer may be summarized as follows: On April 2, 1999, Jamie Tweedie, Daniel Patterson, and Dyer, after socializing together, returned to Tweedie's apartment in Mars Hill around 11 p.m. They met Fred Dixon outside of the apartment, and Dixon followed them to the apartment. Tweedie and Dixon were talking in either the kitchen or the living room, and Dyer and Patterson were watching television. Dyer went out to the kitchen to cook some food and before it was finished, Tweedie went to bed. Dyer testified that before Tweedie retired, Tweedie asked Dyer and Patterson, but not Dixon, if they would "take care of my place for me." Dyer testified that he understood the instruction as referring to Dixon and meaning that they should not "let anything get broken or anybody steal anything or anything like that." Patterson offered a slightly different account, and testified that Tweedie "came into the living room, said he was going to go to bed and, um, asked us if we could watch the apartment and just make sure everything was all right." Patterson concluded that "I was given permission by the owner of the apartment to and a responsibility to look after the apartment."

[¶ 3] After Tweedie went to bed, Dixon became increasingly loud and belligerent. While watching television, Dyer and Patterson heard Dixon making prank telephone calls saying he was Tweedie. Patterson testified that he went into the kitchen and asked Dixon to leave. Dixon got quite irate and started swearing and hollering. He raised his fist at Patterson

and drew it back. Patterson pushed and hit Dixon. Dyer entered the room, grabbed Dixon by the hair, pulled him across the room, and threw him out of the apartment. Dyer was indicted for aggravated assault (Class B), 17–A M.R.S.A. § 208(1)(A) (1983). A judgment was entered on a jury verdict finding Dyer guilty of assault (Class D), 17–A M.R.S.A. § 207.[1] Dyer appeals.

## DISCUSSION

■ [¶ 4] Dyer contends that the court erred in refusing to give a jury instruction on the use of force in defense of premises, 17–A M.R.S.A. § 104(1). "Whether a jury should be instructed on a particular defense in a criminal case almost always depends on whether the evidence presented at trial generates the defense." *State v. Christen*, 1997 ME 213, ¶ 4, 704 A.2d 335, 337 (quoting *State v. Moore*, 577 A.2d 348, 350 (Me.1990)). "A defense is 'in issue' . . . if the evidence is sufficient to make the existence of all facts constituting the defense a reasonable hypothesis for the fact finder to entertain.'" *Id.* (citation and quotations omitted); *see also* 17–A M.R.S.A. § 101(1) (Supp.2000).[2] "The court must view the evidence in the light most favorable to the defendant." *Christen*, 1997 ME 213, ¶ 4, 704 A.2d at 337.

[¶ 5] Justification for the use of force in defense of premises is defined in 17–A M.R.S.A. § 104(1) as follows:

1. Dyer was sentenced to a ten month term of imprisonment in the county jail with all but seven months suspended and was placed on probation for one year.

2. 17–A M.R.S.A. § 101(1) states in pertinent part:

   The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion or authorization

A person in possession or control of premises or a person who is licensed or privileged to be thereon is justified in using nondeadly force upon another when and to the extent that he reasonably believes it necessary to prevent or terminate the commission of a criminal trespass by such other in or upon such premises.

The court refused to give the instruction after having found that while Tweedie, the rightful person with a possessory interest in the premises, was present, his request to Dyer and Patterson to take care of the premises did not place them in possession or control or authorize them to convey a lawful order for Dixon to leave the apartment.

I. Possession or Control of Premises or Licensed to be Thereon

■ [¶ 6] The first element of the defense at issue is whether Dyer was a "person in possession or control of premises or a person who is licensed or privileged to be thereon." 17–A M.R.S.A. § 104(1). At trial, the court and Dyer focused solely on whether Dyer was in possession or control of the premises. Dyer contends that he and Patterson were, at the very least, licensed to be on the premises. A "licensee" in the context of tort law is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." RESTATEMENT (SECOND) OF TORTS § 330 (1965). Used in this sense, Tweedie, by inviting Dyer, Patterson, and Dixon to enter his apartment, gave all three men a

that is set out in the statute defining the crime by proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial that is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt.

license to be on the premises. Thus, the court erred in focusing solely on possession and control of the premises and ignoring the alternative that the person be "licensed or privileged to be thereon." 17–A M.R.S.A. § 104(1); *see also Handyman Equip. Rental Co., Inc. v. City of Portland,* 1999 ME 20, ¶ 9, 724 A.2d 605, 607 (stating that "words must be given meaning and are not to be treated as meaningless and superfluous").

## II. Criminal Trespass

■ [¶ 7] The second element at issue is whether Dyer "reasonably believe[d]" he was "terminat[ing] the commission of a criminal trespass" by Dixon. 17–A M.R.S.A. § 104(1). A person in the position of Dixon commits a criminal trespass if, "knowing that that person is not licensed or privileged to do so, ... [r]emains in any place in defiance of a lawful order to leave that was personally communicated to that person by the owner or another authorized person." 17–A M.R.S.A. § 402(1)(D) (Supp.2000).

■ [¶ 8] Having been invited to enter a private residence, Dixon could become a trespasser by failing to leave after being given a lawful order to leave by the owner or other authorized person, and the "mere demand of the owner constitutes a lawful order for the purposes of the criminal trespass statute." *State v. Tauvar,* 461 A.2d 1065, 1067 (Me.1983). Unlike a person who is invited to a public place, no reason for requesting removal is required. *See id.* Although the parties do not disagree that Tweedie, as the owner,[3] did not personally communicate any order to Dix-

on to leave, the evidence viewed in the light most favorable to Dyer indicates that Patterson requested that Dixon leave the apartment. *See State v. Michaud,* 1998 ME 251, ¶ 17, 724 A.2d 1222, 1230 (finding that "[f]or the limited purpose of determining whether [a] defense [is] 'in issue,'" courts should suspend disbelief and assume that the story that supports the defendant's position is true).

[¶ 9] Dyer correctly contends that an order to leave may be communicated by an "authorized person." 17–A M.R.S.A. § 402(1)(D); *Holland v. Sebunya,* 2000 ME 160, ¶¶ 21–22, 759 A.2d 205, 213 (finding on criminal trespass complaint that the president of the Portland branch of the NAACP was authorized and justified in ordering the defendant removed from a public meeting); *State v. Armen,* 537 A.2d 1143, 1145–46 (Me.1988) (finding in criminal trespass action that office manager of congresswoman's district office was justified in asking constituent to leave); *State v. Gordon,* 437 A.2d 855, 857 (Me.1981). In *Gordon,* the trespasser challenged the police officer's status as an "authorized person" to order him to leave a restaurant. *Gordon,* 437 A.2d at 857. We found that the night manager had "express authority to ask rowdy customers to leave." *Id.* The night manager, within the defendant's hearing, delegated her authority to the police officers, requesting the police officers to ask the defendant to leave. *Id.* at 856–57. This authority was delegable to the police officer because the evidence did not demonstrate that the owner had somehow limited the night manager's "express authority." *Id.* at 857.

---

**3.** The evidence does not reflect whether Tweedie was the owner or a tenant of the building. The testimony simply states that it was either his house or his apartment. *See State v. LoSacco,* 12 Conn.App. 172, 529 A.2d 1348, 1351 (1987) (defining "owner" for pur-

poses of a criminal trespass statute as "one of flexible meaning ... not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof") (citations and quotations omitted).

[¶ 10] Dyer contends that, viewed in the light most favorable to him, the evidence demonstrates that Tweedie "expressly authorized" him and Patterson to take care of his apartment. "Express authority is 'that authority which is directly granted to or conferred upon the agent ... in express terms by the principal ....'" *Libby v. Concord Gen. Mut. Ins. Co.,* 452 A.2d 979, 981 (Me.1982) (quoting *Stevens v. Frost,* 140 Me. 1, 7, 32 A.2d 164, 167 (1943)). Express authority "depends on a manifestation of consent by the principal, and goes to the *perceptions of the agent* not the third party." *Id.* at 982 (emphasis added); *see also* RESTATEMENT (SECOND) OF AGENCY § 33 (1958) ("An agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts."). We find that Tweedie's statement to "take care of my place for me" is sufficient for the jury to entertain a "reasonable hypothesis" that Dyer could believe that he and Patterson were granted express authority to order Dixon to leave the premises.

[¶ 11] In addition, for Dyer to reasonably "believe[ ] it necessary to ... terminate ... a criminal trespass," 17–A M.R.S.A. § 104(1), Dyer must reasonably believe that Dixon knew that he, Dixon, was "not licensed or privileged to ... [r]emain[ ]" in the apartment. 17–A M.R.S.A. § 402(1)(D). This requirement can be met by establishing that Dixon was present when Tweedie authorized Dyer to take care of his apartment. *See, e.g., Gordon,* 437 A.2d at 857 (stating "it was within the Defendant's hearing that the manager delegated this authority to the police officer"). Though the testimony is unclear as to where Tweedie made the request, viewed in the light most favorable to Dyer, a jury could infer that Tweedie told Dyer to "take care of my place for me" while he, Dixon and Dyer were in the kitchen. *See Michaud,* 1998 ME 251, ¶ 17, 724 A.2d at 1230. Therefore, the theory that Dyer reasonably believed that Dixon knew that he was no longer licensed to remain when he was requested to leave is reasonable because the jury could conclude that Dixon was within hearing when Tweedie delegated this authority.

[¶ 12] This evidence, viewed in the light most favorable to Dyer, is sufficient for a jury to entertain a "reasonable hypothesis" that Dyer and Patterson were granted express authority within Dixon's hearing to convey a lawful order to terminate a criminal trespass; that Dyer reasonably believed that Dixon, after he was requested to leave and refused, was defying a lawful order; and that Dyer was licensed to be on the premises and justified in using non-deadly force to terminate the criminal trespass by Dixon. *See* 17–A M.R.S.A. §§ 104(1), 402(1)(D). Because the defense of premises was generated by the evidence, the court erred in refusing to instruct the jury as to that defense. *See State v. Hernandez,* 1998 ME 73, ¶ 7, 708 A.2d 1022, 1025 ("Failure to give a requested jury instruction on a statutory defense generated by the evidence is error.").

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

WATHEN, C.J., with whom CLIFFORD, J., joins, dissenting.

[¶ 13] I respectfully dissent. I am unable to make the leap from Tweedie's general statement to "take care of my place for me" to an express grant of authority for Patterson or the defendant to order Dixon to leave the premises or risk a

criminal trespass for making prank telephone calls. As a licensee, Dixon could only know that his license to remain on the premises was revoked if he heard Tweedie delegate that authority to the defendant. In the present case, the defendant's understanding of Tweedie's words is not determinative, rather it is the authority perceived by Dixon from the statement. Dixon committed a criminal trespass, thereby triggering the defendant's right to defend the premises, only if Dixon *knew* that he was not licensed to remain. *See* 17–A M.R.S.A. § 402(1)(D). Tweedie's general statement provides no basis for such knowledge.

[¶ 14] I would affirm the judgment of conviction.