MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 21
Docket:      Han-17-273
Submitted
  On Briefs: November 29, 2017
Decided:     February 6, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

BETTY L. FRENCH

HJELM, J.

[¶1]  Betty L. French appeals from a judgment convicting her of hindering apprehension (Class D), 17-A M.R.S. § 753(1-B)(A)(3) (2017), obstructing government administration (Class D), 17-A M.R.S. § 751(1) (2017), and refusing to submit to arrest (Class D), 17-A M.R.S. § 751-B(1)(B) (2017), entered by the court (Hancock County, *R. Murray*, *J.*) after a jury trial.  French argues that the court's instructions to the jury on the justification of defense of premises, *see* 17-A M.R.S. § 104 (2017), were incorrect.  Because a citizen is not justified in using nondeadly force against a law enforcement officer for the purpose of defending one's premises, *see* 17-A M.R.S. § 108(1-A) (2017), French was not entitled to that instruction, and we affirm the judgment.

## I. BACKGROUND

[¶2] The evidence, viewed in the light most favorable to the State, entitled the jury to find the following facts beyond a reasonable doubt. *See State v. Lajoie*, 2017 ME 8, ¶ 2, 154 A.3d 132.

[¶3] On March 18, 2016, Maine State Trooper Jacob Ferland arrived at French's residence in Verona to execute a search warrant as part of an investigation into thefts in which French's stepson was a suspect. During the search of the residence, Ferland found personal property bearing the stepson's name. Ferland informed French and her husband that if the stepson did not turn himself in, Ferland would apply for an arrest warrant. Later, Ferland did that and obtained an arrest warrant for the stepson.

[¶4] Just more than a week later, on March 27, 2016, Ferland, in uniform and driving a marked police vehicle, returned to French's residence. On arrival, Ferland knocked on the door, thereby pushing the door open completely, announced his presence, and stepped into the kitchen. Ferland informed French and her husband that he now had the arrest warrant for the stepson. After French's husband went upstairs to get the stepson, French told Ferland to leave the house. Ferland stepped outside the residence to call an assistant district attorney, but when he tried to reenter the house the door was locked.

Ferland announced that he would break down the door if he were not permitted to enter.

[¶5]  Shortly thereafter, the stepson exited the house and was taken into custody by another officer.  Ferland then informed French that he was arresting her for hindering apprehension, but as he walked towards her, French backed into the house and put her hands in her sweatshirt pocket.  Ferland followed her into the house, pulled French's hands out, and attempted to place her in handcuffs.  French pulled away from Ferland, retreating into the kitchen where the two became engaged in a physical struggle that lasted roughly eight minutes, with occasional intervention by French's husband and daughter in support of French, until Ferland ultimately was able to handcuff French.[1]

[¶6]  French, her husband, and her daughter were charged with various offenses as a result of the incident.  For her part, French was charged with hindering apprehension, obstructing government administration, and refusing to submit to arrest.  She pleaded not guilty to each charge, and in March 2017, the court held a one-day jury trial encompassing all charges against each of the three defendants.

---

[1] Using a cell phone, another family member recorded much of the struggle between Ferland and French.  At trial, the recording was admitted in evidence and played for the jury.

4

[¶7] Without objection from any party, in its instructions that pertained to the charges against French, the court instructed the jury on the justifications of self-defense and defense of a third person, and defense of premises.[2] The jury[3] found French guilty of all three charges.[4] The court later sentenced her to concurrent jail terms of three days for refusing to submit to arrest and forty-eight hours on each charge of hindering apprehension and obstructing government administration. French timely appealed. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2(a), (b)(2)(A) (Tower 2016).[5]

## II. DISCUSSION

[¶8] French argues that the court's instructions to the jury on the justification of defense of premises were deficient because the court failed to inform the jurors of the legal standards prescribing when a law enforcement officer may lawfully enter a residence without the occupant's permission. French goes on to argue that omission of this legal principle from the

---

[2] Neither party requested the court to differentiate among the charges when it instructed the jury on the justifications.

[3] Several jurors were excused during the course of the trial, and ultimately, with the consent of the parties, *see* M.R.U. Crim. P. 23(b), the jury comprised eleven members.

[4] The jury also found French's husband and daughter guilty of all charges filed against them.

[5] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed prior to September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

instructions prevented the jury from being able to find that Ferland illegally entered the residence and that, consequently, French was justified in her use of nondeadly force against him for the purpose of defending her premises.[6]  We need not engage in a substantive examination of French's challenge to the court's instructions regarding the defense of premises because French was not entitled to that instruction in the first place.  *See Lajoie*, 2017 ME 8, ¶ 14, 154 A.3d 132 (stating that jury instructions are reviewed for, among other things, whether instructions correctly describe the governing law in all necessary respects).

[¶9]  As a general matter, a person who is licensed or privileged to be on a particular premises is justified in using a reasonable degree of nondeadly force against another in order to defend the premises to the extent the person reasonably believes that such force is necessary to prevent or terminate a criminal trespass.  *See* 17-A M.R.S. § 104(1); *see, e.g., State v. Cannell*, 2007 ME 30, ¶¶ 5, 10, 916 A.2d 231; *State v. Neild*, 2006 ME 91, ¶¶ 10-14, 903 A.2d 339; *State v. Dyer*, 2001 ME 62, ¶¶ 5-12, 769 A.2d 873.

---

[6] French makes a related argument that, based on the record evidence, the court erred by denying her motion for judgment of acquittal, *see* M.R.U. Crim. P. 29, because she was justified in using force against Ferland to defend the premises.  This argument fails for the reasons explained in the text.

[¶10]   When nondeadly force is directed against someone whom the actor knows or should know is a law enforcement officer, however, the availability—and the extent—of any justification for the use of force is significantly more circumscribed, as established in 17-A M.R.S. § 108(1-A). *See State v. Dumond*, 2000 ME 95, ¶ 12, 751 A.2d 1014 (discussing limitations on a citizen's right to use nondeadly force against a law enforcement officer); *State v. Austin*, 381 A.2d 652, 654 (Me. 1978) ("From examination of section 108, together with sections 107 and 752, it becomes clear that the [L]egislature did not intend section 108 to give a person the right to resist a law enforcement officer's use of reasonable, nondeadly force to effect an arrest, whether legal or illegal."); *see also Butler v. Killoran*, 1998 ME 147, ¶ 11, 714 A.2d 129 (stating that "a statute dealing with a subject specifically prevails over another statute dealing with the same subject generally").   Section 108(1-A) applies here because the undisputed evidence establishes that when French used nondeadly force against Ferland as he was trying to arrest her, French knew that Ferland was a law enforcement officer: the two had had contact about a week earlier when Ferland executed a search warrant at French's residence while she was present; on the date of the incident Ferland was in uniform and driving a

marked cruiser; and French testified that she was not surprised that he had returned.

[¶11]  Section 108(1-A) states in full,

> A person is *not* justified in using nondeadly force against another person who that person knows or reasonably should know is a law enforcement officer attempting to effect an arrest or detention, regardless of whether the arrest or detention is legal.  A person *is* justified in using the degree of nondeadly force the person reasonably believes is necessary to defend the person or a [third] person against a law enforcement officer who, in effecting an arrest or detention, uses nondeadly force not justified under section 107, subsection 1.

(Emphasis added.)

[¶12]  In other words, pursuant to the plain language of this statute, the *only* circumstance where a citizen may be entitled to use nondeadly force against a law enforcement officer who is arresting or detaining someone, or is attempting to do so, is for the purpose of defending herself or a third party— and even in that situation, the citizen is justified in using nondeadly force against an officer only when the officer uses excessive force or knows that the arrest or detention is illegal, *see* 17-A M.R.S. § 107(1) (2017).  *See Dumond*, 2000 ME 95, ¶ 12, 751 A.2d 1014; *Austin*, 381 A.2d at 654-55.  The plain language of section 108(1-A) does not authorize a citizen's use of nondeadly force against a law enforcement officer who is arresting or detaining someone,

or attempting to do so, for any other purpose—including defense of premises. *See State v. Christen*, 2009 ME 78, ¶ 12, 976 A.2d 980 (stating that we review "questions of statutory interpretation de novo" by first looking to the plain language of the statute). This reflects a legislative judgment that the use of nondeadly force against a law enforcement officer, who is arresting or detaining someone or attempting to do so, may be justified only in very limited circumstances—where personal safety is at risk and not where other interests, such as private property, are implicated. As we have stated, through its enactment of section 108(1-A) "[t]he [L]egislature has thus cast the advantage on the side of law enforcement officers, leaving the person arrested in most cases to pursue his rights, not through violent self-help, but through prompt hearing before a magistrate with prompt consideration for release on bail or personal recognizance." *Austin*, 381 A.2d at 655 (footnote omitted).

[¶13] This means that pursuant to section 108(1-A), French was not entitled to use nondeadly force against Ferland—who was trying to arrest her—for the purpose of defending her premises, regardless of the lawfulness of Ferland's entry into the residence or his resulting presence inside.

[¶14] Here, in addition to its instructions on defense of premises, the court instructed the jury on French's use of force against Ferland for purposes

of self-defense or defense of a third person.  Pursuant to the second sentence of section 108(1-A), quoted above, self-defense or defense of a third person—where generated by the evidence—is available as a justification for the use of force against a law enforcement officer.  The justification of defending *a person*, however, is distinct and separate from the justification of defending *premises*. *Compare* 17-A M.R.S. § 108 (2017), *with* 17-A M.R.S. § 104.  Because the Criminal Code does not create a justification that allowed French to use nondeadly force against Ferland in order to defend her premises, she was not entitled to *any* instruction on that issue.  Therefore, any error in the substance of the defense of premises instruction cannot entitle French to relief on appeal because the court instructed the jury on a defense to which she was not entitled.

The entry is:

Judgment affirmed.

---

Robert Van Horn, Esq., Van Horn Law Office, Ellsworth, for appellant Betty L. French

Toff Toffolon, Dep. Dist. Atty., Prosecutorial District VII, Ellsworth, for appellee State of Maine