MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 145
Docket:       Yor-15-91
Argued:       December 10, 2015
Decided:      September 20, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

NICHOLAS E. WESTGATE

JABAR, J.

[¶1]   Nicholas E. Westgate appeals from a judgment of conviction entered by the trial court (York County, *O'Neil, J.*) on a jury verdict finding him guilty of five counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2015), and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2015).  At trial, the State sought to prove that Westgate committed each of the offenses against a victim under the age of twelve.  Though the evidence established that the victim turned twelve during the general timeframe within which the crimes were allegedly committed, the State did not move to amend the charges, and neither party requested instructions regarding crimes of a lower class committed with the same conduct as that charged when that conduct is perpetrated against a

2

victim who is at least twelve but not yet fourteen years old.  *See* 17-A M.R.S. §§ 255-A(1)(E), 256(1)(A) (2015).

[¶2]  The court did not deliver any lesser-included offense instructions, and it charged the jury—with the consent of both parties—that the jury did not have to determine with specificity the date or dates on which the sexual contact occurred.  Thus, the court did not require the jury to find one element of the crime—that the victim was younger than twelve when the sexual contact occurred—in order to deliver a guilty verdict.  On this record, we are unable to conclude that it was highly probable that the error did not affect the jury's verdict, and we are compelled to vacate the judgment.

## I.  BACKGROUND

[¶3]  In 2012, Westgate was charged by indictment with five counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1), and one count of visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B).  Although both crimes charged are defined as acts perpetrated against a victim under the age of twelve, *see* 17-A M.R.S. §§ 255-A(1)(E-1), 256(1)(B), the indictment alleged that the criminal acts occurred "[o]n or about Summer,

2009," and indicated that the victim was born on July 20, 1997, and thus turned twelve during the summer of 2009.[1]

[¶4]  After granting several motions to continue the dates set for jury selection and trial, the court held a three-day jury trial in May 2014. Following the swearing in of the jury, the court clerk read the indictment aloud and told the jury that it was tasked with determining whether Westgate was guilty or not guilty of the charges alleged.[2]  The court then delivered its preliminary charge to the jury, stating that the indictment was not evidence, and that the State bore the burden of proving the allegations in the indictment beyond a reasonable doubt.  In the State's opening statement, the prosecutor alerted the jury to the fact that the alleged victim did not remember exactly when the incidents occurred.

---

[1]  In the indictment, each of the five Class B counts charging Westgate with unlawful sexual contact pursuant to 17-A M.R.S. § 255-A(1)(E-1) (2015) read as follows: "On or about Summer, 2009, in Sanford, YORK COUNTY, Maine, NICHOLAS WESTGATE, being at least three years older than Jane Doe (DOB 7/20/97), not his spouse, did intentionally subject Jane Doe (DOB 7/20/97), who was in fact less than 12 years of age, to sexual contact."  The single Class C count charging Westgate with visual sexual aggression pursuant to 17-A M.R.S. § 256(1)(B) (2015) similarly alleged that: "[o]n or about Summer, 2009, in Sanford, YORK COUNTY, Maine, NICHOLAS WESTGATE, having in fact attained 18 years of age, and for the purpose of arousing or gratifying sexual desire, did expose his genitals to Jane Doe (DOB 7/20/97) or cause Jane Doe (DOB 7/20/97) to expose her genitals to NICHOLAS WESTGATE and Jane Doe (DOB 7/20/97), not NICHOLAS WESTGATE's spouse, had not in fact attained 12 years of age."

[2]  Although the trial transcript indicates that the prosecutor delivered this charge, the court's instructions that immediately follow refer to "the piece of paper that Madam Clerk just read . . . with the allegations associated with this case."  From this remark, we infer that the transcript's designation of the prosecutor as the speaker is due to an error in transcription.

4

[¶5]   Viewing the evidence thereafter presented "in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Begin*, 2015 ME 86, ¶ 2, 120 A.3d 97 (quotation marks omitted).

[¶6]   In 2009, during the summer months of June, July, August, and September, the victim was living with her father and visited her mother, who was living with Westgate.  The victim described five incidents of Westgate having sexual contact with her, one of which also involved him exposing his genitals to her and causing her to expose her genitals to him.  The first incident of sexual contact occurred during a weekend in June, and the second incident occurred two weeks later.  The third incident of sexual contact occurred on a Thursday in June.  Though the victim provided no indication of when the fourth incident occurred, she testified that the fifth incident coincided with the episode of visual sexual aggression, and that the fifth incident occurred before her twelfth birthday.

[¶7]   At the close of the State's case-in-chief, the court advised that it would likely instruct, with respect to the indictment's "[o]n or about" timeframe, that the State was not required to prove the date that the offenses

occurred.  Westgate did not object, and proceeded to mount a defense focused on more general timing and credibility.

[¶8]   Westgate argued that he could not have committed the crimes during the summer of 2009 because he did not have any unsupervised contact with the victim during that period.  He asserted that the victim's testimony about the timing of the offenses was not credible because it was inconsistent with her inability to pinpoint the timing with such specificity before trial, and it conflicted with statements that the victim made during pretrial interviews with the police and the prosecutor.  After Westgate refreshed the victim's recollection by playing for her a recording of her pretrial interview with the police, the victim admitted that she had initially reported that Westgate committed the criminal conduct in August 2009.  Westgate later played for the jury a recording of the police interview, during which the victim told the investigating officer that the incidents of sexual contact could have occurred "in June or August."  Westgate also played a recording of the victim's pretrial interview with the prosecutor, during which the victim stated that she could not remember the days of the week or the months when the incidents occurred, or how old she was at the time, but that she thought that she was

6

"eleven or twelve." On Westgate's request, the court admitted these recordings, but only to challenge the victim's credibility.

[¶9] At the close of the evidence, in describing the charges of unlawful sexual contact to the jury, the court paraphrased the language of the indictment, stating that each of the five charges alleged that "on or about the summer of 2009, . . . Westgate, being at least three years older than [the victim], who was not his spouse, did intentionally subject her, who was in fact less than 12 years of age, to sexual contact." In describing the charge of visual sexual aggression, the court again paraphrased the indictment, stating that the charge alleged that "on or about the summer of 2009 . . . Westgate, having in fact obtained 18 years of age and for the purpose of arousing or gratifying sexual desire did expose his genitals to [the victim], or cause [the victim] to expose her genitals to him and [the victim] was not his spouse and had in fact not obtained the age of 12." The court instructed the jury to consider each charge individually, and to determine whether each had been proved beyond a reasonable doubt.

[¶10] The court explained that the indictment referred "to the summer of 2009, for the time of these offenses." With respect to this "on or about" timeframe, the court instructed the jury as follows:

The charges here claim that the crime was committed on or about a time, a specific time. The specific date of a crime need not be proven. It is enough if the State proves beyond a reasonable doubt that A, the crime charged was committed by the Defendant and B, it happened sometime within the timeframe suggested by all of the evidence in the case. *The question is whether the crime was committed, not when it happened and that must be the princip[al] focus of your inquiry.*

However, you may consider any evidence of uncertainty as to the dates of the alleged crime in deciding whether or not the offense has been proven beyond a reasonable doubt and in judging whether to believe witnesses and their ability to recall events and in determining whether the Defendant may have had the opportunity to commit the offense alleged.

(Emphasis added.) Neither Westgate nor the State objected to these instructions or requested any additional instructions.

[¶11] After retiring to deliberate, the jury asked for reinstruction on "issues involving timing and the indictment." When the court indicated that it intended to repeat the instruction that it had already given regarding the indictment's "on or about" timeframe, again neither the State nor Westgate raised any objection. The court reinstructed the jury that the charges "reflect upon episodes that the State alleges took place in the summer of 2009," and that the jury was to consider whether each episode had been proved beyond a reasonable doubt. It then repeated its "on or about" instruction, using the same language as it had used before, and again without any objection.

[¶12]  Before the jury delivered its verdict, defense counsel stated on the record that Westgate had decided not to request a lesser-included offense instruction "because [he] didn't want to concede to the jury or have them misconstrue it as a concession that he committed any wrongful act at all.  [His] defense was all or nothing, and that's the way [he] presented it."  The State did not request a lesser-included offense instruction, and none was given.

[¶13]  The jury returned a verdict of guilty on all six counts as charged and the court entered a judgment of conviction on the verdict.  The court imposed a sentence of ten years' imprisonment with all but eight years suspended, followed by ten years of probation, on each of the charges of unlawful sexual contact, with the sentences on each charge to run concurrently.  On the charge of visual sexual aggression, the court imposed a concurrent sentence of twelve months.  Westgate filed an application to allow an appeal from his sentence, which we granted and consolidated with his timely appeal from the judgment of conviction.  *See* 15 M.R.S. §§ 2115, 2151 (2015); M.R. App. P. 2(b)(2)(A), 20(a), (h).

## II.  DISCUSSION

[¶14]  On appeal, Westgate argues that the court erred by instructing the jury that it did not need to determine when the offenses occurred, but only

whether the offenses were committed within the timeframe suggested by the evidence. He asserts that he was denied his right to a fair trial because the court failed to clearly instruct the jury that he could only be convicted of the crimes charged if the jury found, beyond a reasonable doubt, that the conduct was perpetrated against the victim before her twelfth birthday.[3]

A.    Standard of Review

[¶15]  Because Westgate did not object to the court's timing instructions at trial, we review his unpreserved challenge to those instructions for obvious error. *See* M.R. Crim. P. 30(b), 52(b) (Tower 2014);[4] *State v. Baker*, 2015 ME 39, ¶ 11, 114 A.3d 214.  To prevail on a challenge subject to the obvious error standard, Westgate bears the burden of demonstrating "(1) an error, (2) that is plain, (3) that affects substantial rights," and that (4) "seriously affects the fairness and integrity or public reputation of judicial proceedings." *State v. Fay*, 2015 ME 160, ¶ 13, 130 A.3d 364 (alterations omitted) (quotation marks omitted).

---

[3] We reject without discussion Westgate's unpersuasive contention that the indictment and the victim's testimony offer him no protection against double jeopardy. *See State v. Hebert*, 448 A.2d 322, 326 (Me. 1982) ("The scope of jeopardy created by an indictment is . . . as broad as that indictment may fairly be read.").

[4] Although the Maine Rules of Unified Criminal Procedure have superseded the Maine Rules of Criminal Procedure since Westgate's trial, the new rules do not differ from the former rules in any respect that is relevant here. *See* M.R.U. Crim. P. 1(e)(3), 30(b), 52(b).  In this opinion, we cite to the rules in effect at the time of Westgate's trial.

[¶16]  In reviewing jury instructions for error at the first step of the obvious error analysis, we evaluate the instructions in their entirety, considering "the total effect created by all the instructions and the potential for juror misunderstanding," *State v. Varney*, 641 A.2d 185, 187 (Me. 1994) (quotation marks omitted), and whether the instructions "informed the jury correctly and fairly in all necessary respects of the governing law," *Baker*, 2015 ME 39, ¶ 10, 114 A.3d 214 (quotation marks omitted).  Jury instructions are erroneous if they create "the possibility of jury confusion and a verdict based on impermissible criteria."  *State v. Ashby*, 1999 ME 188, ¶ 3, 743 A.2d 1254 (quotation marks omitted).  An instructional error is "plain" if the error is so clear that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."  *State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032 (quotation marks omitted).  "An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding."  *Fay*, 2015 ME 160, ¶ 13, 130 A.3d 364 (quotation marks omitted).  In reviewing for obvious error, our ultimate task is to determine whether the defendant received a fair trial.  *Dolloff*, 2012 ME 130, ¶ 76, 58 A.3d 1032.

B.     Obvious Instructional Error

[¶17]   A defendant facing criminal prosecution by the State has a fundamental right, guaranteed by the Fifth and Sixth Amendments to the United States Constitution, to a jury charged with determining whether the State has proved, beyond a reasonable doubt, facts that establish each element of the crime charged.  *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995).  "In order for the criminal justice system to attain just and efficient results through the medium of a jury, it is mandatory on the part of a trial judge that in his charge to the jury he inform them in clear and concise terms as to the law which is applicable to the particular facts in issue which the evidence tends to prove."  *State v. Bahre*, 456 A.2d 860, 866 (Me. 1983).  "We have previously ruled that a failure to properly instruct the jury on each of the essential elements of the offense [charged] constitutes obvious error affecting substantial rights . . . ."  *State v. Nickerson*, 534 A.2d 1323, 1325 (Me. 1988).

[¶18]   Here, Westgate was charged by indictment with five Class B violations of  17-A M.R.S.  §  255-A(1)(E-1), which criminalizes the act of intentionally subjecting another person to sexual contact when "[t]he other person, not the actor's spouse, is in fact less than 12 years of age and the actor is at least 3 years older."  He was also charged with one Class C violation of

12

17-A M.R.S. § 256(1)(B), which criminalizes the act of exposing one's genitals to another or causing another person to expose his or her genitals "[f]or the purpose of arousing or gratifying sexual desire" when the actor has "in fact attained 18 years of age" and "the other person, not the actor's spouse, has not in fact attained 12 years of age." For the crimes charged, one of the facts that had to be proved by the State, beyond a reasonable doubt, was that Westgate had committed these acts before the victim's twelfth birthday, which fell in the middle of the period that the alleged victim described.

[¶19] The trial court read the indictment to the jury, but did not specify what the elements of the criminal charges were, including the element that the victim must have been under the age of twelve when the conduct occurred. In addition, when the court went on to address the "[o]n or about" timeframe employed by the indictment to pinpoint a time period during which the offenses allegedly occurred, the court did not tell the jury that the State had to prove that the offenses occurred before the victim's twelfth birthday. Instead, the court stated that the State did not have to prove an exact date.

[¶20] After retiring for deliberations, the jury submitted a note asking for further instruction on the issue of timing. This request suggests that the court's initial instructions confused the jury about the necessity of

determining whether the offenses occurred before the victim's twelfth birthday. In response to the jury's request, the court stated that the jury could return a verdict of guilty so long as it found that the crimes had been committed within the timeframe suggested by the evidence. The court further instructed the jury that its principal focus should be the question of whether the crimes had been committed, not when they occurred. Counsel did not seek, and the court did not provide, the critical follow up to that instruction, specifically, "as long as you find that the crime was committed before the child's twelfth birthday."

[¶21]    Thus, clarifying instructions regarding the issue of timing, although *generally* accurate, here suggested that the date of the offenses did not matter. Because the evidence established that the victim turned twelve on July 20, 2009—during the summer that the offenses were allegedly perpetrated—and the crimes charged proscribe acts perpetrated against a victim who is younger than twelve, the date of the offenses did matter.[5]

---

[5] We have stated that

> [i]t is insufficient merely to give the jury general and abstract propositions of law, which may be correct in themselves but, without further explanation as to their application to the particular facts of the case, leave the jury to speculate as to how they should be applied in determining guilt . . . in the factual scenario presented by the evidence.

*State v. Bahre*, 456 A.2d 860, 866 (Me. 1983).

[¶22]  Although the trial court did, by reading the indictment, suggest that the jury had to find that the victim was under twelve, we conclude that the import of this instruction was overcome by its incongruity with the court's later instruction that the State did not have to prove the dates on which the offenses were committed.  Viewing the jury instructions as a whole, we conclude that the court's timing instructions plainly and erroneously suggested that the jury could bypass the issue of whether the victim was younger than twelve when the offenses were committed.  *See Baker*, 2015 ME 39, ¶ 14, 114 A.3d 214.

[¶23]  We also conclude that the gap in the court's instructions regarding the necessity of finding the victim's age denied Westgate the right to have the jury determine whether the State had proved, beyond a reasonable doubt, every fact necessary to support his conviction.  *See State v. Dana*, 517 A.2d 719, 721 (Me. 1986).  The court's instructions to the jury supply the only insight that we can have into the jury's essential fact-finding.  The incomplete instructions given here affected Westgate's substantial rights and the fairness of his trial, *see Fay*, 2015 ME 160, ¶ 13, 130 A.3d 364, because the instructions allowed the jury to find him guilty without determining beyond a reasonable doubt that the conduct occurred before the victim turned twelve,

*see Dana*, 517 A.2d at 721. Because the victim's age was an element of the crimes charged, and the timing of the offenses relative to the victim's twelfth birthday was an issue disputed at trial, the instructional error compromised the integrity of the jury's verdict. We must conclude that the error deprived Westgate of his fundamental right to a fair trial.

C.     Disposition

[¶24]  The State's evidence at trial could establish all of the elements of the crimes charged aside from the victim's age. That evidence would have been sufficient to support Westgate's conviction for violations of the statutes that criminalize—at lower classifications—the same conduct as that charged when that conduct is perpetrated against a victim who is twelve or thirteen, but not yet fourteen. *See* 17-A M.R.S. §§ 255-A(1)(E), (E-1), 256(1)(A), (B); *State v. Thornton*, 2015 ME 15, ¶ 11, 111 A.3d 31 (explaining that the crime defined by 17-A M.R.S. § 255-A(1)(E) is a lesser-included offense of the crime defined by 17-A M.R.S. § 255-A(1)(E-1)). However, the State did not move to amend the indictment to charge Westgate with the lesser-included offenses of Class C unlawful sexual contact and Class D visual sexual aggression, and it did not ask the court to issue lesser-included offense instructions to the jury.

16

[¶25]  "The State may charge a person with . . . [a] Class . . . C crime only through indictment by a grand jury." *Id.* ¶ 7.  Although a grand jury must issue every indictment, the trial court may permit the amendment of an indictment without resubmission to the grand jury "'at any time before verdict or finding if the amendment does not change the substance of the crime.'"  *Id.* ¶ 8 (quoting M.R.U. Crim. P. 7(e)).  If an amendment "creates a substantive change, the indictment must be resubmitted to the grand jury."  *State v. Gauthier*, 2007 ME 156, ¶ 18, 939 A.2d 77, *abrogated in part on other grounds by Manley v. State*, 2015 ME 117, ¶ 18, 123 A.3d 219.  "A change is substantive if it changes the nature or grade of the charged offense; it is formal if it does not alter the facts that must be proved."  *Id.*

[¶26]  The State now urges us to substantively amend the judgment to conform to the evidence, and to impose a conviction for the uncharged offenses of Class C unlawful sexual contact and Class D visual sexual aggression pursuant to 17-A M.R.S. §§ 255-A(1)(E) and 256(1)(A), respectively.  However, at trial, Westgate expressly told the court that he did not want an instruction on the lesser offenses.  The State did not oppose that request, and the court did not issue a lesser-included offense instruction of its own initiative, though it had the discretion to do so pursuant to 17-A M.R.S.

§ 13-A(1) (2015). To amend the judgment at the appellate level would impose a conviction for offenses that were not presented to the jury—and, perhaps more importantly, for charges that *neither* party wanted the jury to consider.

[¶27]  The uncertainty demonstrated by the parties and the court regarding the necessary elements to charge the jury to obtain a conviction on the Class B charge of unlawful sexual contact may be attributable, in part, to the confusing evolution of the law proscribing unlawful sexual contact. Title 17-A M.R.S.A. § 255 (1983),[6] the predecessor to section 255-A, was originally enacted in 1975. P.L. 1975, ch. 599, § 1 (effective May 1, 1976). The elements of the crime of unlawful sexual contact as set out in the 1983 version of the statute prohibited sexual contact with another person in five specific instances: when the victim (A) had not expressly or impliedly acquiesced in the sexual contact; (B) was unconscious or otherwise physically incapable of resisting, and had not consented to the sexual contact; (C) was under age fourteen and the defendant was at least three years older; (D) suffered from an apparent mental disability that rendered him or her substantially incapable of understanding the nature of the contact; or (E) was in official custody and

---

6  Title 17-A M.R.S.A. § 255 was repealed and replaced by P.L. 2001, ch. 383, §§ 22, 23 (effective Jan. 31, 2003) and has since been amended, most recently by P.L 2011, ch. 691, §§ A-14, A-15 (effective May 22, 2012) (codified at 17-A M.R.S. § 255-A (2015)).

18

the defendant had disciplinary or supervisory authority over him or her. 17-A M.R.S. § 255(1)(A-E).

[¶28]  No sentencing classification was specified within the elements of any of these five criminal acts; sentencing classification was addressed in a separate subsection, 17-A M.R.S.A. § 255(2), indicating that unlawful sexual contact was a Class D crime, except that violation of subsection (1)(C), sexual contact with a person under age fourteen, was enhanced to a Class C crime.

[¶29]  By the time section 255 was repealed and replaced effective January 31, 2003, P.L. 2001, ch. 383, §§ 22, 23 (codified at 17-A M.R.S.A. § 255-A (Supp. 2002)), the unlawful sexual contact prohibition had evolved into twenty separately defined crimes, with the sentencing classification for each stated within the paragraph stating the elements of each crime.  The unlawful sexual contact prohibition in 17-A M.R.S. § 255-A(1) (2015) has further evolved into twenty-nine separate crimes, each with its own sentencing classification ranging from Class A to Class D.  With the offense so defined, many prohibited acts may be subject to separate prosecutions for violation of the separately defined crimes, and confusion by the prosecution, the defense, and the courts as to how to address and instruct juries on prosecution for any particular offense is understandable.

[¶30] Because the jury was not adequately advised of the necessity of finding that the crimes were committed before the victim's twelfth birthday, and we cannot know whether a properly-instructed jury would have convicted Westgate of the offenses charged—or of any lesser offenses had it been given the opportunity—we have no choice but to vacate the conviction and remand the case for further proceedings.[7] *See Bollenbach v. United States*, 326 U.S. 607, 615 (1946) ("In view of the place of importance that trial by jury has in our Bill of Rights, . . . the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, [should not be substituted] for ascertainment of guilt by a jury under appropriate judicial guidance . . . .").

The entry is:

> Judgment of conviction vacated. Remanded for
> a new trial.

---

[7] Because we vacate Westgate's conviction, we do not consider his contentions that the court abused its discretion in setting his sentence.

20

**On the briefs:**

Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Nicholas E. Westgate

Kathryn Loftus Slattery, District Attorney, Prosecutorial District 1, Alfred, and Anne Marie Pazar, Esq., Alfred, for appellee State of Maine

**At oral argument:**

Jamesa J. Drake, Esq., for appellant Nicholas E. Westgate

Anne Marie Pazar, Esq., for appellee State of Maine

York County Superior Court docket number CR-2012-1285