MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2017 ME 8
Docket:      Pis-16-169
Argued:      December 14, 2016
Decided:     January 17, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DANA P. LAJOIE

ALEXANDER, J.

[¶1]  Dana P. Lajoie appeals from a judgment of conviction for baiting deer (Class E), 12 M.R.S. § 11452(1)(A), (2) (2016), and hunting from an observation stand overlooking deer bait (Class E), 12 M.R.S. § 11452(1)(B), (2) (2016), entered by the trial court (Piscataquis County, *Stitham, J.*) following a one-day jury trial.[1]  On appeal, Lajoie argues that (1) the trial court committed obvious error when it failed to expressly instruct the jury on the requisite mens rea required for each offense charged, and (2) statements by the prosecutor during his opening and closing—regarding the unfairness of Lajoie's actions and the importance of hunting in the local community—

---

[1]  The court also found Lajoie civilly liable for failing to wear hunter orange pursuant to 12 M.R.S. § 11203 (2016).  He does not appeal from that judgment; therefore, it is not discussed further.

2

constituted prosecutorial misconduct, which resulted in obvious error that was sufficiently prejudicial to have affected the outcome of the proceeding. We affirm the judgment of the trial court.

## I. CASE HISTORY

[¶2] Viewed in the light most favorable to the State, the jury could have rationally found the following facts beyond a reasonable doubt. *See State v. Haag*, 2012 ME 94, ¶ 2, 48 A.3d 207.

[¶3] On October 31, 2015—during the open season on deer—two game wardens encountered Lajoie hunting from his tree stand in the woods near Rips Road in Brownville. Lajoie was wearing camouflage clothing and had a loaded Winchester rifle and a deer call. There were apples belonging to Lajoie at the base of the tree stand, apples in view of the tree stand, apples scattered throughout the area, and no apple producing trees nearby. Lajoie had placed apples in that area on that day and on days earlier in the fall.[2] Lajoie used the apples to attract deer and to cover his scent, because he knew deer were attracted to apples.

---

[2] One of the investigating game wardens had been to that same area on October 9, 2015, and had seen large piles of apples. Lajoie claimed that he had placed the apples in that area prior to the start of open season, when it was legal to do so. The game warden testified that apple piles left in that area would, at most, last only a week or two.

[¶4]  As a result of this conduct, Lajoie was charged with illegally baiting deer, 12 M.R.S. § 11452(1)(A), and hunting from an observation stand overlooking deer bait, 12 M.R.S. § 11452(1)(B).  He pleaded not guilty to both charges.  A one-day jury trial was held on March 17, 2016.  Lajoie proceeded unrepresented at trial.

[¶5]  In his opening statement, the prosecutor stated that hunting was a great resource in this State, and that there were rules about how hunting was to be done—and claimed that "the purpose of these statutes is to make sure that there's a level playing field, that everybody has – every hunter has the same opportunity as the next one."  Lajoie did not object to these statements.

[¶6]  The State presented testimony from the two wardens involved in the investigation of Lajoie's actions. After the State rested its case, Lajoie testified in his own defense.  He denied using apples to "bait" deer into the area below his tree stand and explained to the jury that he was using the apples for scent cover rather than bait.  He explained that there were many products used to cover human scent—such as "Buck Jam," which is rubbed on a hunter's boots.  He concluded by stating that he chose apples for scent cover over other products because apples provide a "more natural scent."

[¶7] Lajoie and the prosecutor discussed proposed jury instructions with the court and agreed that the jury instructions would contain the language from the deer baiting statute and would also define "hunting" for the jury. The agreed-to instructions were given by the court.

[¶8] In his closing argument to the jury, the prosecutor returned to his claims about the policy reasons for the hunting laws. He stated that "the purpose of these laws is to create a level playing field . . . especially in this area – this is an area where hunting is important to people." Lajoie did not object to these statements.

[¶9] Prior to deliberations, the court reminded the jurors that it was their responsibility to decide the facts and to apply the law provided by the court to those facts. The court further stated that the opening statements and closing arguments by the parties were not evidence from which the jury could find facts.

[¶10] The jury returned a verdict of guilty on both baiting deer pursuant to 12 M.R.S. § 11452(1)(A), and hunting from an observation stand overlooking deer bait pursuant to 12 M.R.S. § 11452(1)(B). The court entered a judgment on the verdicts imposing fines of $400 for illegally baiting deer and $400 for hunting from an observation stand overlooking deer bait. Lajoie

timely appealed pursuant to M.R. App. P. 2(b)(2)(A) and 15 M.R.S. § 2115 (2016).

## II.  LEGAL ANALYSIS

A.    Jury Instructions

[¶11]  At the close of evidence, Lajoie and the prosecutor discussed jury instructions with the court.  The instructions proposed by the court tracked the language contained in the deer baiting statute.  Lajoie requested an amendment to the instructions to include the exceptions contained within the statute pertaining to standing crops and food left as a natural part of the agricultural process.  The court agreed to include Lajoie's requested amendment, and Lajoie indicated that he was satisfied with the instructions as amended.

[¶12]  The deer baiting statute prohibits the following conduct:

**1.  Prohibitions.**  A person may not, during an open hunting season on deer:

**A**.  Place salt or any other bait or food in a place to entice deer to that place; or

**B.**  Hunt from an observation stand or blind overlooking salt, grain, fruit, nuts or other foods known to be attractive to deer. This prohibition does not apply to hunting from an observation stand or blind overlooking:

      (**1**) Standing crops;

      (**2**) Foods that are left as a result of normal agricultural operations or as a result of a natural occurrence; or

      (**3**) Bear bait that is placed at a bear hunting stand or blind in accordance with section 11301, subsection 1.

12 M.R.S. § 11452(1).

[¶13] Because Lajoie did not object to or otherwise raise the alleged error in the jury instructions at trial, we review his unpreserved challenge for obvious error.[3] *See State v. Pabon*, 2011 ME 100, ¶ 18, 28 A.3d 1147; *see also* M.R.U. Crim. P. 52(b). To prevail under the obvious error standard, Lajoie must demonstrate that (1) there is an error, (2) that is plain, (3) that affects substantial rights, and, if so, (4) that it is error that seriously affects the integrity, fairness, or public reputation of judicial proceedings. *See State v. Fay*, 2015 ME 160, ¶ 13, 130 A.3d 364.

[¶14] In reviewing jury instructions to determine if there is, in fact, an error, we evaluate the instructions in their entirety and will consider "the total effect created by all the instructions and the potential for juror

---

[3] We could decline to reach the merits of Lajoie's challenge to the jury instructions in its entirety because he not only expressly acquiesced to those instructions but affirmatively requested an amendment to them, which the court granted. *See State v. Foster*, 2016 ME 154, ¶ 10, --- A.3d --- (observing that we "will not review an issue—even for obvious error—when a party has, as a trial strategy, openly acquiesced to the process employed"); *State v. Ford*, 2013 ME 96, ¶ 15, 82 A.3d 75 ("[O]bvious error review is precluded when a defendant expressly waives a jury instruction.").

misunderstanding, and whether the instructions informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Westgate*, 2016 ME 145, ¶ 16, 148 A.3d 716 (citations omitted). "Jury instructions are erroneous if they create the possibility of jury confusion and a verdict based on impermissible criteria." *Id*.

[¶15]  An error regarding jury instructions is "plain" if that error is so clear that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032. "An error affects a criminal defendant's substantial rights if the error was sufficiently prejudicial to have affected the outcome of the proceeding." *Fay*, 2015 ME 160, ¶ 13, 130 A.3d 364 (citation omitted). In reviewing for obvious error, our ultimate task is to determine whether the defendant received a fair trial. *Dolloff*, 2012 ME 130, ¶ 76, 58 A.3d 1032.

1. Illegally Baiting Deer

[¶16]  Lajoie argues that the baiting deer charge required an instruction on the mens rea element of the crime: intent. The trial court instructed the jury that "a person may not, during an open hunting season on deer, place salt or any other bait or food in a place to entice deer to that place." This

instruction tracked the statutory language, as the parties expressly agreed to in advance. The instruction required the jury to find, beyond a reasonable doubt, that Lajoie placed apples "to entice deer to that place." As such, the instructions required the jury to find that it was Lajoie's intent to entice deer to his location using the apples he placed in order to return a guilty verdict. A further instruction on intent was not required and could have led to juror confusion.

[¶17]   Lajoie not only expressly acquiesced to these instructions, he affirmatively asked for an amendment to them to include the exceptions contained within the statute pertaining to standing crops and food left as a natural part of the agricultural process. The court agreed to include Lajoie's requested amendment, and Lajoie acknowledged that he was satisfied with the instructions as amended.

[¶18]   The instructions given by the court fairly and accurately informed the jury of all necessary elements of the governing law. *Westgate*, 2016 ME 145, ¶ 16, 148 A.3d 716. The instructions necessarily required the jury to find that it was Lajoie's intent to entice deer because to convict him it had to find that he placed bait "to entice deer to that place." Reviewing the

instructions given as a whole, there was no obvious error and Lajoie was not deprived of a fair trial.

2.     Hunting from an Observation Stand Overlooking Deer Bait

[¶19]    Lajoie also contends that the charge of hunting from an observation stand overlooking deer bait required an instruction on the mens rea element of "knowing or intentional."  The trial court instructed the jury as follows:

> [A] person may not, during an open hunting season on deer, hunt from an observation stand overlooking salt, grain, fruit, nuts, or other foods known to be attractive to deer.  The law goes on to state that this prohibition does not apply to hunting from an observation stand overlooking standing crops or foods that are left as a result of normal agricultural operations or as a result of a natural occurrence.

> Now, hunting is defined.  To hunt means to pursue, catch, take, kill, or harvest wild animals or wild birds, or attempt to catch, take, kill, or harvest wild animals or wild birds.

Both parties declined to have the court expressly define "bait" in the instructions and instead affirmatively chose to have the statute read verbatim.

[¶20]  There was no error in the instruction given by the court.  To find Lajoie guilty, the jury had to find that he was hunting from a tree stand, and that the tree stand was overlooking, among other things, "fruit . . . or other foods known to be attractive to deer."  Lajoie stated that he was hunting in his

tree stand, he knew there were apples around his tree stand, and he knew there were no apple trees nearby. The instruction fairly and accurately informed the jury on the governing law, and any further instruction on knowledge or intent was not necessary. The instruction, therefore, did not constitute obvious error, and Lajoie was not deprived of a fair trial.

B.    Prosecutorial Misconduct

[¶21]    Lajoie argues that the statements by the prosecutor that purported to explain that hunting regulations and statutes were premised on a need to keep a level playing field among hunters constituted prosecutorial misconduct, and that the court's failure to inject itself into the trial to prevent or to tell the jury to disregard the statements constituted obvious error that was sufficiently prejudicial to have affected the outcome of the trial.

[¶22]    We have observed that "when a defendant has not objected to statements made by the prosecutor at trial, and subsequently asserts on appeal that those statements constituted prosecutorial misconduct that deprived [him] of a fair trial, we review for obvious error." *Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (citations omitted). "To demonstrate obvious error, the defendant must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights." *Id.* (citation omitted). "Even if these three

conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* (citation omitted).

[¶23] The prosecutor's policy arguments regarding the purpose underlying Maine's deer baiting statute—to prevent unfair hunting practices and "level the playing field"—are unsupported by case law, statute, legislative history presented to us, or by facts in evidence, and therefore were improper. *See State v. Robinson*, 2016 ME 24, ¶ 28, 134 A.3d 828 (observing that the prosecutor's presentation to the jury "must be strictly confined to the domain of facts in evidence").

[¶24] Although the prosecutor's statements during his opening and closing were improper, that error was not plain because it was not "so clear under existing law that the court and the prosecutor were required to address the matter even in the absence of a timely objection." *State v. Fahnley*, 2015 ME 82, ¶ 35, 119 A.3d 727.

[¶25] Further, Lajoie has not demonstrated on appeal that the error affected his substantial rights or the outcome of the trial. *Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032 (observing that a prosecutor's statements that do not "draw an objection . . . will rarely be found to have created a

12

reasonable probability that [they] affected the outcome of the proceeding").
The court, in its charge to the jury, instructed the jury that it should find the facts based on the evidence presented and that it should perform this duty "free from any passion, any prejudice, any sympathy, or any bias whatsoever."[4]  The court further instructed the jury that the parties' opening statements and closing arguments were not evidence from which the jury could find facts. S*ee Dolloff*, 2012 ME 130, ¶ 55, 58 A.3d 1032 (observing that jurors are presumed to follow the instructions of the court).

[¶26]  Given Lajoie's own testimony that he was hunting, that he had smashed and rubbed apples on the ground near his tree stand, and that he knew deer were attracted to apples, there was sufficient evidence for the jury to find him guilty of the crimes charged.  Lajoie has not demonstrated that there is any reasonable probability that the statements by the prosecutor

---

[4]  Lajoie also argues that the prosecutor's statements—regarding the importance of hunting in the community—pandered to community values and constituted prosecutorial misconduct that resulted in obvious error.  This argument, too, is unpersuasive.  *See State v. Fahnley*, 2015 ME 82, ¶ 34, 119 A.3d 727 (stating that despite prosecutor's comments, which suggested that the jury protect the community through its verdict, any concern created by such statements was cured when the court instructed the jury that it was to find facts free of emotions, feelings of prejudice, or sympathy, and that it was not responsible for protecting the community).  Although the prosecutor did state that hunting was an important natural resource in the community, he did not urge the jurors to convict on that basis, nor did he urge jurors to convict Lajoie as a means to protect community values or to send a message about fairness.  To the extent that there was error, the error was not prejudicial given the court's instructions to the jury that it perform its fact-finding duty free from passion, prejudice, sympathy, or bias, and that the openings and closings presented by the parties were not evidence from which the jury could find facts.  *See id.*

affected the jury's verdict, *see Pabon*, 2011 ME 100, ¶ 35, 28 A.3d 1147, and on appeal, it is Lajoie who shoulders the "significant" burden of establishing that he is entitled to relief, *see Dolloff*, 2012 ME 130, ¶ 38, 58 A.3d 1032.  He has not carried that burden.

The entry is:

Judgment affirmed.

<hr>

Gene R. Libby, Esq., and Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Dana P. Lajoie

R. Christopher Almy, District Attorney, and Tracy Collins, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Piscataquis County Unified Criminal Docket docket numbers CR-2015-464 and -465
FOR CLERK REFERENCE ONLY