MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2018 ME 42
Docket:      Cum-17-139
Argued:      November 16, 2017
Decided:     March 22, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

ABDIRAHMAN H. HAJI-HASSAN

HUMPHREY, J.

[¶1]  Abdirahman H. Haji-Hassan appeals from a judgment of conviction entered by the trial court (Cumberland County, *Warren, J.*) after a jury found him guilty of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2017). Haji-Hassan contends that the court abused its discretion and erred when it excluded evidence that the State of Maine's Chief Medical Examiner, Dr. Mark Flomenbaum, had been removed from his former position as Chief Medical Examiner for the Commonwealth of Massachusetts and erred when it instructed the jury on evidence of flight to avoid prosecution.  Because the court did not abuse its discretion or err in either respect, we affirm the judgment.

## I. BACKGROUND

[¶2] "When the evidence is viewed in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt with respect to the murder conviction." *State v. Cummings*, 2017 ME 143, ¶ 3, 166 A.3d 996.

[¶3] On November 21, 2014, Haji-Hassan and four other men were in an apartment in Portland. Haji-Hassan began waving a gun around while arguing with one of the men near the front door. Haji-Hassan fired two shots: the first was in a downward direction, and the second hit the victim in the leg. When the second shot was fired, one of the men left the apartment. Another man, the tenant of the apartment, went to the kitchen and heard a third shot followed by a "thud." When the tenant returned to the first room, he saw the unresponsive victim lying on the floor with a wound to his head and called 911. Haji-Hassan and the remaining man had fled the apartment while the tenant was still in the kitchen.

[¶4] On November 25, 2014, Haji-Hassan was charged by complaint with intentional or knowing murder, 17-A M.R.S. § 201(1)(A). At the time the complaint was filed, Haji-Hassan's location was unknown. On December 19, 2014, law enforcement officers went to a home in Minneapolis, Minnesota

where Haji-Hassan was believed to be staying. The officers were admitted into the home and repeatedly announced their presence and called to Haji-Hassan. Haji-Hassan, who was hiding in the basement, came out only when a police dog barked at him, and when he did come out, he gave the officers a fake name.

[¶5]  On November 22, 2014, Dr. Flomenbaum performed an autopsy of the victim. On a later date, he examined photographs and x-rays that were taken in January 2015 of an injury to Haji-Hassan's leg. Dr. Flomenbaum opined that the leg injury was "consistent with having been sustained by a bullet . . . and could absolutely have occurred around the time frame of about eight weeks prior to when the photographs were taken" and that it was "consistent with healing of an entrance and exit of a bullet coming fairly straight downwards."

[¶6]  In January 2015, Haji-Hassan was charged by indictment with murder, 17-A M.R.S. § 201(1)(A).

[¶7]  Before trial, the State filed two motions[1] for *in camera* review of information and a motion in limine regarding Dr. Flomenbaum. The State's motions for *in camera* review requested that the court determine whether, in

---

[1] One of these motions was captioned as an "ex parte motion" and the other was not. The trial court referred to both motions as "ex parte."

4

accordance with *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the State had to disclose information about a Connecticut trial in which Dr. Flomenbaum testified as a hired expert, and in which the presiding judge rejected his testimony, finding it "not credible." In pretrial proceedings and written orders on the motions for *in camera* review, the court ordered disclosure of the information to Haji-Hassan and also addressed the potential admissibility of the information for impeachment purposes but did not rule on that question.[2] Although the court invited the parties to file motions in limine to address the evidence in question "if defense counsel [sought] to use the documents or information for purposes of impeachment," no motions in limine were filed regarding the determinations by the Connecticut judge.

[¶8] The State's motion in limine sought to exclude evidence that Dr. Flomenbaum had been removed from his employment as the Chief Medical Examiner for the Commonwealth of Massachusetts. At the hearing on the motion in limine, a few hours before the jury was sworn and the trial began, Haji-Hassan presented evidence that Dr. Flomenbaum's removal was

---

[2] The court questioned whether this evidence was admissible as opinion evidence or was simply hearsay. In the written order on the motions for *in camera* review, the court specified that "the ultimate determination of admissibility should not be made unilaterally by the court but should be made after both sides have an opportunity to present their arguments."

attributed to "fundamental operational and administrative failures, including a substantial backlog of bodies, one case of a missing body, [his office's] failure to meet public health and occupational safety standards and [Dr. Flomenbaum's] lack of candor with the administration." The court concluded that Dr. Flomenbaum's removal was based on his failures as an administrator, not his performance as a pathologist, and excluded the evidence of his removal.[3] The court reasoned that his role as an administrator was not an issue in Haji-Hassan's case, and therefore evidence of his removal was not "relevant to . . . his qualifications and actions as a pathologist," and admission would lead to "a fruitless discussion of what the grounds [for removal] were and what the grounds weren't." Nonetheless, the court reminded the parties that Dr. Flomenbaum's testimony at trial could open the door to the admission of the excluded evidence.

[¶9] The court held a six-day jury trial in December 2016. Dr. Flomenbaum testified about the autopsy that he performed on the victim and his assessment of Haji-Hassan's leg injury. Neither party questioned Dr. Flomenbaum about his removal from his position in Massachusetts or about

---

[3] Indeed, the Governor of Massachusetts acknowledged in his removal letter, of which the trial court was made aware, that Dr. Flomenbaum's "excellent reputation as a pathologist" was not in question.

6

the presiding judge's assessment of his credibility in the Connecticut trial, and the court made no further rulings on the issues.

[¶10] After closing arguments, the court instructed the jury orally and in writing. With respect to Haji-Hassan's presence in Minnesota, the court gave the following instruction on flight to avoid prosecution:

> There is also one other subject mentioned by both counsel, and there is an issue as to whether Mr. Haji-Hassan fled to Minnesota to avoid arrest or prosecution. There was evidence presented by both sides on that issue and it is up to you to determine the facts. I just need to tell you that, if proven, flight to avoid prosecution may be evidence of consciousness of guilt. You are not required to draw such an inference. It is up to you, as the jury, to decide what weight or effect, if any, should be given to any evidence concerning Mr. Haji-Hassan's arrest in Minnesota.

Haji-Hassan did not object to the flight instruction.

[¶11] The jury found Haji-Hassan guilty of murder, and the court sentenced him to imprisonment for a term of thirty-nine years.

[¶12] Haji-Hassan timely appealed from the judgment of conviction. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2(b)(2)(a) (Tower 2016).[4]

---

[4] This appeal was commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1.

## II. DISCUSSION

A.    Exclusion of Evidence of Dr. Flomenbaum's Removal from Employment in Massachusetts

[¶13]  We first consider Haji-Hassan's argument that the court should have admitted the evidence of Dr. Flomenbaum's removal from his position as Chief Medical Examiner for the Commonwealth of Massachusetts.  "We review a trial court's rulings on relevance for clear error, and rulings on admissibility for an abuse of discretion."  *State v. Maine*, 2017 ME 25, ¶ 23, 155 A.3d 871 (alteration omitted) (citations omitted) (quotation marks omitted).  However, if the challenge to the ruling was not properly preserved for appellate review, we review the ruling for obvious error.[5]  *See State v. Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727; *see also* M.R. Evid. 103(d); M.R.U. Crim. P. 52(b).

[¶14]  In its pretrial ruling on the State's motion in limine to exclude evidence of Dr. Flomenbaum's removal, the court determined that the evidence of his removal was not relevant to his actions as a pathologist in Haji-Hassan's

---

    [5]  Maine Rule of Evidence 103(e) requires parties to timely renew the proffer of evidence at trial in the absence of a clear indication that the ruling was final.  *See* M.R. Evid. 103(e); *see also* M.R. Evid. 103 Maine Restyling Note (Nov. 2014) ("Maine Rule 103(e) puts the burden on counsel to renew an objection or offer at trial, unless the trial judge or the circumstances make it clear that the previous ruling was indeed final."); *State v. Thomes,* 1997 ME 146, ¶ 7, 697 A.2d 1262 (noting that a "court cannot evaluate the probative value of contested evidence in a vacuum" and concluding that the evidentiary issue was unpreserved because the court made only preliminary decisions on the motion in limine).

case and would lead to a "fruitless discussion" of the grounds for his removal. The court reminded the parties that the door to admission could be opened at trial, but neither party made any further motions regarding the removal evidence or attempted to question Dr. Flomenbaum about it. "Although the applicable standard of review is generally depend[e]nt upon whether the alleged error is preserved, we do not need to determine whether" Haji-Hassan preserved his proffer of the removal evidence to impeach Dr. Flomenbaum's qualifications and capabilities as an expert. *See State v. Allen,* 2006 ME 21, ¶ 9, 892 A.2d 456. We assume, without deciding, that Haji-Hassan's arguments and the court's ruling at the hearing on the State's motion in limine served to preserve the objection, and we therefore apply the clear error and "abuse of discretion standard[s] of review, which [are] more beneficial to [Haji-Hassan] than the obvious error standard." *See id.* Even under that more beneficial standard of review, however, Haji-Hassan cannot prevail because the court did not err or abuse its discretion when it excluded evidence of Dr. Flomenbaum's removal.

[¶15] We must first determine whether the court committed clear error in determining that the evidence of Dr. Flomenbaum's removal, offered for purposes of impeaching his qualifications and capabilities as an expert, was not

relevant to the case. The Maine Rules of Evidence generally authorize the admission of relevant evidence. *See* M.R. Evid. 402. "Evidence helpful in evaluating the credibility of a witness is 'of consequence' since it will aid in appraising the probative value of other evidence." Field & Murray, *Maine Evidence* § 401.1 at 92 (6th ed. 2007); *see also* M.R. Evid. 401, 607. At the hearing on the motion in limine, Haji-Hassan argued that the evidence of Dr. Flomenbaum's removal from his Massachusetts employment was relevant because (1) it was "essential impeachment evidence when it [came to] his credibility and when it [came] to what he [was] saying" because he would likely describe his qualifications, education, and past employment;[6] and (2) Dr. Flomenbaum's opinion regarding Haji-Hassan's leg injury "was not based on the sort of thing that experts in the field would base an opinion on . . . [and] that sort of goes hand-in-hand with neglect of duty, incompetence, inefficiency and poor supervision." The trial court determined that Dr. Flomenbaum's removal was not attributed to his abilities, actions, and qualifications as a pathologist, but to his failures as an administrator. In

---

[6] The State did not seek to qualify Dr. Flomenbaum as an expert by asking about his position as Chief Medical Examiner for the Commonwealth of Massachusetts. When asked about his employment and training, Dr. Flomenbaum merely stated that his current position is Chief Medical Examiner for the State of Maine, that he is a medical doctor, that he received his medical degree at the Albert Einstein College of Medicine, and that he did a medical residency in pathology and finished a fellowship in forensic pathology. Haji-Hassan did not object to this line of questioning at trial.

Haji-Hassan's case, Dr. Flomenbaum acted exclusively as a pathologist—he performed the autopsy of the victim and offered an opinion of the nature of Haji-Hassan's leg wound after examining photographs and x-rays. This is in contrast to *State v. Coleman*, where Dr. Flomenbaum performed administrative functions by supervising the collection of sexual assault kit evidence and its chain of custody, and the State used his employment as the Massachusetts Chief Medical Examiner to qualify him as an expert. *See State v. Coleman*, 2018 ME 41, ¶ 23, --- A.3d ---. Based on the evidence and arguments in Haji-Hassan's case, the court did not err by determining that Dr. Flomenbaum's removal did not speak to his credibility as a pathologist and was not relevant to the testimony that he offered in Haji-Hassan's trial. In the circumstances of this case, the court did not err when it excluded the evidence. *See* M.R. Evid. 401, 402.

[¶16] Further, the court determined that admitting the evidence of the removal for administrative failures was not "justif[ied]" by his role in Haji-Hassan's case and would lead to "a fruitless discussion of what the grounds [for Dr. Flomenbaum's removal] were and what the grounds weren't." This reasoning essentially reflects a determination that even if the evidence of Dr. Flomenbaum's removal had some probative value, it was substantially outweighed by the risks of confusing the issues in the case and wasting time,

both of which are grounds for excluding relevant evidence pursuant to Rule 403. The court's weighing of probative value against the risks of admission does not demonstrate an abuse of discretion.

[¶17] For the first time on appeal, Haji-Hassan makes two additional arguments in support of his contention that the court erred by excluding evidence of Dr. Flomenbaum's removal from his employment in Massachusetts. First, he argues that because the jury could have reasonably inferred that Dr. Flomenbaum testified favorably on behalf of the State to secure his Maine employment and avoid a second removal, evidence of his removal was relevant to show bias and was therefore admissible pursuant to Rule 607. And, second, he argues that because Dr. Flomenbaum's removal was partly based on findings that he lacked candor and failed to communicate fully and frankly, his removal was relevant evidence of a specific instance of untruthfulness, and was therefore admissible pursuant to Rule 608(b)(1).

[¶18] These unpreserved challenges are reviewed for obvious error because they are raised for the first time on appeal. We "may take notice of an obvious error affecting a substantial right, even if the claim of error was not properly preserved." M.R. Evid. 103(d); M.R.U. Crim. P. 52(b); *see also State v. Oeur*, 1998 ME 82, ¶ 4, 711 A.2d 118. "For us to vacate a conviction based on

the obvious error standard of review, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727 (citation omitted) (quotation marks omitted). An error is plain if the error is so clear under current law that the trial judge was "derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *See State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032 (quotation marks omitted). On appeal, Haji-Hassan has the burden to demonstrate an obvious error. *See id.* ¶ 39.

[¶19] Even if we were to assume that evidence of Dr. Flomenbaum's removal was relevant to Haji-Hassan's case pursuant to Rule 401, the theories of admissibility that Haji-Hassan now advances for the first time do not result in a conclusion that the court committed obvious error by excluding the evidence. *See State v. McCurdy*, 2002 ME 66, ¶ 13, 795 A.2d 84; *Capul v. Fleet Bank of Me.*, 1997 ME 140, ¶ 12, 697 A.2d 66.

[¶20] Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  M.R. Evid. 403.

[¶21]  We first evaluate the probative value of the removal evidence.  The connection between Dr. Flomenbaum's removal and his alleged bias in favor of the State of Maine to maintain his current employment is speculative at best, and its probative value, if any, is slight.  The evidence is no more probative of bias than the fact, taken alone, that he is currently employed by the State.  Further, its probative value with regard to his character for untruthfulness is also slight because "lack of candor" and "failure to communicate fully and frankly" are not specific instances of untruthful *conduct*, but are more akin to extrinsic opinions of a third party, and are not presented according to rules allowing evidence that is probative of a character for untruthfulness.

[¶22]  Having in mind the dangers listed in Rule 403, the court not only determined that the removal evidence was irrelevant and inadmissible, but also determined that it would lead to a "fruitless discussion of what the grounds [for the removal] were and weren't."  *See State v. Maderios,* 2016 ME 155, ¶¶ 10-11, 149 A.3d 1145; *see also* Field & Murray, *Maine Evidence* § 403.1 at 110 ("It is the judge's duty to make sure that the trial is conducted in an orderly manner so as to see that the jury is not distracted by collateral matters or testimony too

14

remote or speculative to aid in determining where the truth lies."). Even in light of Haji-Hassan's new arguments presented to us on appeal, it was not obvious error to exclude evidence of the removal because the low probative value of the removal evidence was substantially outweighed by the dangers described in Rule 403.[7]

[¶23]   Haji-Hassan also contends that the court violated his Sixth Amendment right to confrontation by excluding the removal evidence. *See* U.S. Const. amend VI.  "The United States Supreme Court has held that the Confrontation Clause guarantees a criminal defendant an adequate opportunity to cross-examine adverse witnesses.  Thus, the protections of the Sixth Amendment are not absolute and ensure a right of effective cross-examination, not a right of unrestricted cross-examination." *State v. Johnson*, 2009 ME 103, ¶ 15, 982 A.2d 320 (quotation marks omitted) (citation omitted).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about,

---

[7] Haji-Hassan also argues that the court erred by excluding evidence from the Connecticut trial in which Dr. Flomenbaum testified as an expert witness and the judge determined that Dr. Flomenbaum was not credible.  However, the trial court here never ruled on the admissibility of this evidence because its only ruling was an order requiring the State to disclose the evidence to Haji-Hassan.  Absent any ruling that excluded evidence of the Connecticut trial, there is nothing here for Haji-Hassan to challenge.  For further discussion of the Connecticut trial, see *State v. Coleman*, 2018 ME 41, ¶¶ 16-21, --- A.3d ---.

among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also* M.R. Evid. 403. We have already concluded that the trial court did not clearly err when it determined that the evidence of Dr. Flomenbaum's removal was not relevant in this case and that the court did not abuse its discretion when it determined that the evidence would lead to the dangers listed in Rule 403. Accordingly, the exclusion of that evidence was a reasonable limitation on Haji-Hassan's cross-examination considering other possible options for impeachment available to Haji-Hassan—potential bias based on Dr. Flomenbaum's current employment with the State; sufficiency of the evidence supporting his opinion of Haji-Hassan's leg injury based solely on his review of the photographs and x-rays taken weeks after the injury allegedly occurred; and other challenges to his examination procedures and actions as a pathologist. Haji-Hassan's Sixth Amendment rights were not violated.

[¶24] We recognize that the admissibility of evidence of Dr. Flomenbaum's removal has been raised in at least two other cases and may continue to be an issue in trial court proceedings where he appears as an expert witness. *See, e.g., State v. Coleman*, 2018 ME 41, --- A.3d ---; *State v. Davis*,

No. AROCD-CR-2013-137 Unified Criminal Docket (Aroostook Cty., Aug. 29, 2016). This is properly a case-by-case determination, and we announce no blanket rule on the admissibility of this evidence in other cases. The trial courts must exercise their discretion in the particularized context of each case to admit or exclude such evidence after evaluating the extent of any relevance it may have, and, if it is deemed relevant, weighing its probative value against the dangers listed in Rule 403.

B.      Jury Instruction on Flight to Avoid Prosecution

[¶25]  Haji-Hassan also argues that the court committed obvious error when it instructed the jury on how it could evaluate evidence of flight because there was insufficient evidence to support an inference that Haji-Hassan fled to avoid prosecution and the instruction favored the State.

[¶26]  Because Haji-Hassan did not object to or otherwise raise the alleged error in the flight instruction at trial, we review his unpreserved challenge for obvious error. *See State v. Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132; M.R.U. Crim. P. 52(b). "[W]e evaluate the instructions in their entirety and will consider the total effect created by all the instructions and the potential for juror misunderstanding, and whether the instructions informed the jury

correctly and fairly in all necessary respects of the governing law." *Lajoie*, 2017 ME 8, ¶ 14, 154 A.3d 132 (quotation marks omitted).

[¶27] "[E]vidence of flight permits the jury to infer . . . a consciousness of guilt or that the defendant was motivated by a desire to avoid prosecution for the underlying charges." *State v. Lemay*, 2012 ME 86, ¶ 21, 46 A.3d 1113. Haji-Hassan first argues that the evidence at trial did not generate a factual predicate to support the flight inference and instruction. The State, however, presented sufficient evidence to support an inferential finding of consciousness of guilt, including evidence that Haji-Hassan fled the Portland apartment immediately after the shooting, that he was in Minnesota shortly after the shooting, that he did not emerge from the basement of the home in Minnesota until he was confronted by a barking police dog, and that he initially gave a fake name to law enforcement when he was arrested.

[¶28] Contrary to Haji-Hassan's further contentions, the instructions given by the court, when reviewed as a whole, sufficiently explained that the State had the burden of proof on every element of the crime, that the jury must decide if the facts were proved beyond a reasonable doubt, and that the jury was permitted to consider innocent explanations for his presence in Minnesota.

In short, Haji-Hassan has failed to demonstrate any error, much less obvious error, in the court's instruction. *See Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132.

The entry is:

Judgment affirmed.

Amber L. Tucker, Esq. (orally), The Law Office of Amber L. Tucker, LLC, Portland, for appellant Abdirahman H. Haji-Hassan

Janet T. Mills, Attorney General, and Lara M. Nomani, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2014-7716
For Clerk Reference Only